**KIRKLAND, Plaintiff-Appellant, v. ARCHBOLD, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 22671.   Decided February 2, 1953.

Hartshorn, Thomas, Leuck & Edelman, Cleveland, for plaintiff-appellant.

Harry E. Davis, Cleveland, for defendant-appellee.

## OPINION

By SKEEL, PJ.

This appeal comes to this court on questions of law from a judgment for the plaintiff in the sum of Two Hundred Dollars ($200.00) entered by the court without the interven-

tion of a jury. The action is founded on a written contract dated August 2, 1949, whereby the plaintiff agreed to construct certain alterations and to do certain repairs to a dwelling house located at 2321 East 88th St., in the City of Cleveland for the sum of $6000.00.

The plaintiff claims to have started the work called for by said contract about August 5, 1949, and to have continued therewith until November 5, 1949, when he was forceably and wrongfully ejected from the premises by the defendant's agent. It is plaintiff's claim that at the time he was wrongfully prevented from proceeding further with the work, the reasonable value of the work and materials expended by him and his sub-contractors, in repairing the building at 2321 East 88 Street, was $2985.00; that only $800.00 had been paid thereon, leaving a balance due of $2185.00, which he claims as the amount of his damages.

The defendant's defense is that her agent, as he had the right to do under the contract, tried to stop the plaintiff from proceeding to plaster the house until he had replaced all wood lathe with rock lathe as called for by the contract and also before the outside walls were lined with rock wool. It is the claim of defendant that plaintiff was attempting to plaster the house in direct violation of paragraph 4 of the contract, which provides:

"All outside walls are to be lined with rock wool and rock lathe, superimposed thereon."

It was the claim of the defendant that such work, of necessity, must be done before proceeding to plaster. Defendant also claims that much of the other work accomplished by the plaintiff was unsatisfactory and performed in an unworkmanlike manner, and was of no value.

The trial was almost completely conducted by the court on the premises of the building being repaired, except for short periods when they gathered in a neighborhood settlement house. The record clearly shows that the court considered as evidence the things observed by him during the trial in the building, and that no attempt was made to describe what was thus observed into the bill of exceptions. This fact is demonstrated many places in the bill. We quote from page 127 as typical:

"Q. What did you do in the hall, if anything?

"A. Well, along the hallway, put in a partition, you know Then I straightened out this partition. This partition was originally there (indicating).

"Q. What partition is that?

"A. This partition here (indicating).

"Q. Between two bedrooms downstairs?

"A. Well, this is a partition, comes across the building from the front, made a living room and a bedroom here. Come down this hallway into this bedroom and there is a door here (indicating)."

The court, in rendering judgment for the plaintiff, held that the plaintiff was in default under the provisions of the contract in that he was attempting to install the plaster before the rock wool was put in the outside walls, and the wood lathe was replaced by rock lathe, as called for by Paragraph 4 of the contract above quoted, and that the defendant acted within her rights in preventing plaintiff from proceeding with the plastering until such work had been completed.

Paragraph 20 of the contract provides:

"The Owner agrees to pay the Contractor, as follows: $1,000.00 when satisfactory work has been done for ten days; an additional $1,000.00 when twenty days work has been completed; an additional $1,000.00 when thirty days work has been completed, and $1,000.00 on completion of the contract. $2000.00 shall be paid within thirty days after the completion of the contract."

The court held that paragraph 20 of the contract provided for progressive payments and that such provisions "are severable from the remainder of the contract and if there has been full or substantial compliance with these provisions, the plaintiff is entitled to recover such progress payment." The court further held that the defendant having paid $800.00 on the first payment provided for, was an admission that ten days of satisfactory work had been done and therefore rendered judgment for $200.00, the balance due on the first payment.

The plaintiff claims the following errors:

"1. The judgment of the court below for plaintiff in the amount of only $200.00 was inadequate.

"2. The judgment of the court below, in limiting recovery to $200.00 is manifestly against the greater weight of the evidence.

"3. The judgment of the court below, in limiting recovery to $200.00 is contrary to law.

"4. The trial court erred in overruling plaintiff's motion for a new trial.

"5. Errors in the exclusion and admission of evidence.

"6. Other errors apparent from the face of the record."

The court committed error prejudicial to the rights of plaintiff in holding that the provisions of the contract were severable. The plaintiff agreed to make certain repairs and improvements on the defendant's property for which he was to be paid Six Thousand Dollars. The total consideration was to be paid for the total work specified in the contract. The fact

that a schedule of payments was set up based on the progress of the work does not change the character of the agreement. (**Lumber Co. v. Purdum, 41 Oh St 373.**)

The court found that the plaintiff and not the defendant breached the agreement, leaving the job without just cause, when the work agreed upon was far from completed. In fact, the plaintiff by his pleadings and evidence does not attempt to claim substantial performance on his part. The question is, therefore, clearly presented on the facts as the court found them to be, as to whether or not the plaintiff being found in default can maintain a cause of action for only part performance of his contract.

The earlier case law of Ohio has refused to permit a plaintiff to found an action on the provisions of a contract where he himself is in default. The only exception to the rule recognized is where the plaintiff has substantially performed his part of the agreement.

In the case of **Larkin v. Buck, 11 Oh St 562,** the syllabus provides:

"B. agreed to work for L. on his farm 'for six months certain, at eleven dollars per month,' no time being specified in the agreement when payment was to be made. B left the service of L. at the expiration of the first month, without cause, and against the wish of L. and brought suit to recover of L. for the month's service. Held, that the contract was entire and that suit could not, under the circumstances, be maintained by L. for such partial performance."

Also in the case of **Ashley v. Henahan, 56 Oh St 559, parag. 1** of the syllabus provides:

"1. The general rule is, that one who seeks to recover on a contract must show substantial performance on his part, and this rule applies to a 'building contract' as to any other. But slight omissions and inadvertences should be disregarded. Where there has been an honest effort by the contractor to perform, and not a wilful omission, substantial performance is all that is required."

In the case of **Brick Co. v. Machinery Co., 89 Oh St 365, parag. 1** of the syllabus holds:

"1. A written contract for the sale of several articles of personal property for a sum in gross is indivisible except by subsequent agreement of the parties, and the seller cannot recover the contract price or any part thereof unless he substantially performs or tenders performance of all the terms of the contract on his part to be performed."

See also **Mehurin v. Stone, 37 Oh St 49,** and **Goldsmith v. Hand, 26 Oh St 101.**

The result of decisions which deny a defaulting contractor all right of recovery even though his work has enriched the estate of the other party to the contract is to penalize the defaulting contractor to the extent of the value of all benefit conferred by his work and materials upon the property of the other party. This result comes from unduly emphasizing the technical unity and entirety of contracts. Some decisions permit such result only when the defaulting contractor's conduct was wilful or malicious.

An ever-increasing number of decisions of courts of last resort now modify the severity of this rule and permits defaulting contractors, where their work has contributed substantial value to the other contracting party's property, to recover the value of the work and materials expended on a quantum meruit basis, the recovery being diminished, however, to the extent of such damage as the contractor's breach causes the other party. These decisions are based on the theory of unjust enrichment. The action is not founded on the broken contract but on a quasi-contract to pay for the benefits received, which cannot be returned, diminished by the damages sustained because of the contractor's breach of his contract.

The leading case supporting this theory of the law is Britton v. Turner, 6 N. H. 481, 26 Am. Dec. 713. This was an action in quantum meruit for work performed under a contract under which the plaintiff was in default. The court said in the third paragraph of the syllabus:

"In case of a failure to perform such special contract, by the default of the party contracting to do the service, if the money is not due by the terms of the special agreement, and the nature of the contract be such that the employer can reject what has been done, and refuse to receive any benefit from the part performance, he is entitled so to do, unless he have before assented to and accepted of what has been done, and in such case the party performing the labor is not entitled to recover however much he may have done.

"But, if upon a contract of such a character, a party actually receives useful labor, and thereby derives a benefit and advantage, over and above the damage which has resulted from a breach of the contract by the other party, the labor actually done, and the value received, furnish a new consideration, and the law thereupon raises a promise to pay to the extent of the reasonable worth of the excess. And the rule is the same whether the labor was received and accepted, by the assent of the party prior to the breach, and under a contract, by which, from its nature, the party was to receive the labour from time to time until the completion of the whole contract,

or whether it was received and accepted by an assent subsequent to the performance of all which was in fact done."

Williston on Contracts, Vol. 5, p. 4123, parag. 1475, says:

"The element of forfeiture in wholly denying recovery to a plaintiff who is materially in default is most strikingly exemplified in building contracts. It has already been seen how, under the name of substantial performance, many courts have gone beyond the usual principles governing contracts in allowing relief in an action on the contract. But many cases of hardship cannot be brought within the doctrine of substantial performance, even if it is liberally interpreted; and the weight of authority strongly supports the statement that a builder, whose breach of conract is merely negligent, can recover the value of his work less the damages caused by his default; but that one who has wilfully abandoned or broken his contract cannot recover. The classical English doctrine, it is true, has denied recovery altogether where there has been a material breach even though it was due to negligence rather than wilfullness; and a few decisions in the United States follow this rule, where the builder has not substantially performed. But the English court has itself abandoned it and now holds that where a builder has supplied work and labor for the erection or repair of a house under a lump sum contract, but has departed from the terms of the contract, he is entitled to recover for his services and materials, unless (1) the work that he has done has been of no benefit to the owner; (2) the work he has done is entirely different from the work which he has contracted to do; or (3) he has abandoned the work and left it unfinished.

"The courts often do not discuss the question whether one who has intentionally abandoned the contract did so merely to get out of a bad bargain or whether he acted in a mistaken belief that a just cause existed for the abandonment. Where the latter situation exists, however, it would seem that the defaulter might properly be given recovery for his part performance. It seems probable that the tendency of decisions will favor a builder who has not been guilty of conscious moral fault in abandoning the contract or in its performance."

The drastic rule of forfeiture against a defaulting contractor who has by his labor and materials materially enriched the estate of the other party, should, in natural justice, be afforded relief to the reasonable value of the work done. less whatever damage the other party has suffered. Such a rule has been clearly recognized in the law of bailment where a defaulting bailee has enhanced the property of the bailor (Dobee on Bailments, Page 139) (1914) and also by statute, a defaulting vendee in a conditional sales contract, where

the vendor retakes the property, is entitled to a return of a just proportion of the money paid. **Sec. 8570 GC.**

We conclude, therefore, that the judgment is contrary to law as to the method by which the right to judgment was determined.

One further circumstance as to the manner in which the trial was conducted needs to be considered. The place where a trial should be conducted is in the court house. In cases where the trial judge is by agreement to try the facts (a jury being waived), the judge may view the premises as provided by §11420-2 GC. But to conduct the proceedings while moving from place to place in the building which is the subject of the trial, goes far beyond the authority given by statute to "View the Premises." The parties to a trial are entitled to a trial conducted in a proper manner and in such a way that a full and complete record can be had for purposes of review. While the court in this case has certified to the fact that the bill of exceptions contains all the evidence, yet, a reading of the bill as above pointed out, clearly shows that what was observed, while the trial was going on, in the uncompleted house at 2321 E. 88 St., was considered as evidence although there was no attempt to bring such evidence into the bill. This court is therefore powerless to pass upon plaintiff's claim that the finding of facts and judgment are not supported by the weight of the evidence.

The Supreme Court in **Railroad Company v. Bowlin, 76 Oh St 367,** declared in the opinion:

"Counsel is right in assuming that if the impressions obtained by the jury from the view, are themselves evidence in a case, there is no way in which that evidence can be carried into a bill of exceptions and hence it inevitably follows as he insists, that there is no power in a reviewing court to pass upon the weight of the evidence."

See also Traction Co. v. Hutchinson, 27 C. C. (N. S.) 58.

But the vice of such trial goes further than the impossibility of completing a record for purposes of review. A court trial requires every safeguard available to protect the dignity and solemnity of the proceeding so that full, complete and judicious consideration may be given to the issues, unhampered by distracting surroundings. While the subject is not covered by statute in this State, as it is in many States, yet, the authority to build court houses at public expense and the control given by law to the judges to supervise their use, is indicative of a public policy requiring judicial proceedings to be conducted in the place legally provided therefor A trial judge is without power to carry on judicial proceedings completely outside the court house.

488

We must conclude, therefore, that the conduct of this trial in its entirety outside the court room, even though the parties participated therein without objection, constituted an abuse of discretion and the judgment must for that reason be reversed on the ground of irregularity.

Hays v. Territory of Oklahoma, 7 Okla. 15; A. L. R. Vol 43, Parag. 4, Annotations p. 1529; American Juris. Vol. 14 p. 269, Parag. 37 (Courts); American Juris. Vol. 53, page 34, Parag. 13 (Trials).

For the foregoing reasons the judgment is reversed and the cause is remanded for further proceedings. Exc. Order see journal.

HURD, J, KOVACHY, J, concur.