112

THE STATE OF OHIO, APPELLANT, *v.* LANE, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.* BRUMFIELD, APPELLEE.
THE STATE OF OHIO, APPELLANT, *v.* ANDREWS, APPELLEE.

(Nos. 79-25, 79-26 and 79-27—Decided December 12, 1979.)

*Mr. Lynn Alan Grimshaw,* prosecuting attorney, and *Mr. R. Randolph Rumble,* for appellant.
*Mr. Christopher D. Stanley,* for appellee Lane.
*Mr. Myron Schwartz,* for appellee Brumfield.
*Mr. Theodore E. Meckler,* for appellee Andrews.

LOCHER, J. The issues to be resolved in this case are three-fold. Succinctly stated, they are: Whether an inmate of a maximum security penitentiary, who is tried in an improvised courtroom within that same correctional institution for an offense committed while serving a sentence within the confines of that same penitentiary, is denied (1) the constitutional right to a fair trial; (2) the constitutional right to a public trial; and (3) the constitutional right to equal protection of the laws.

It is initially noted that, although prisoners in state penal institutions necessarily lose some rights as a result of their conviction and incarceration, they retain certain constitutional rights not necessarily diminished by the necessity of their imprisonment. *Pell* v. *Procunier* (1974), 417 U.S. 817.

*I.*

By holding a trial within a prison for an offense committed within that same institution, the constitutional right to a fair trial is abridged in three ways: (1) The presumption of innocence which must attach to the criminal defendant is eroded; (2) there is a major interference with the jury's ability to remain impartial; and (3) the right of the defendant to obtain witnesses is chilled.

The United States Supreme Court, in *In re Murchison* (1955), 349 U.S. 133, discussed, at page 136, the constitutional requirements concerning the right to a fair trial:

"A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. *But our system of law has always endeavored to prevent even the probability of unfairness.*\*\*\*But to perform its high function in the best way

'justice must satisfy the appearance of justice.' *Offutt* v. *United States*, 348 U.S. 11, 14." (Emphasis added.)

The presumption of innocence of the accused in a criminal prosecution is a basic component of a fair trial in the criminal justice system. *Coffin* v. *United States* (1895), 156 U.S. 432, 453. It is the duty of our courts to guard against factors which may undermine the fairness of the fact-finding process and thereby dilute the right to the presumption of innocence. To implement the presumption courts must be alert to factors that may undermine the fairness of the fact-finding process. *Estelle* v. *Williams* (1976), 425 U.S. 501, 503. These protections are extended to all criminal defendants even those who happen to be prison inmates. See *Wolff* v. *McDonnell* (1974), 418 U.S. 539.

It is well established that the mere probability of deleterious effects on fundamental rights calls for close judicial scrutiny. See *Estes* v. *Texas* (1965), 381 U.S. 532. The prison environment which is laden with a sense of punishment of the guilty within transmits too great an impression of guilt on the part of the inmate who is on trial.

The Sixth Amendment to the United States Constitution and Section 10 of Article I of the Ohio Constitution guarantee every accused in a criminal proceeding the right to be tried by an impartial jury. This court does not believe that a trial within a maximum security penitentiary with 12-foot high double walls, armed guards, high guard towers and visible barred windows allows a jury to maintain the delicate posture of impartiality which is a mainstay of our judicial system.

The United States Supreme Court, in *Frank* v. *Mangum* (1915), 237 U.S. 309, noted, at page 349, that "***[a]ny judge who has sat with juries knows that in spite of forms they are extremely likely to be impregnated by the environing atmosphere." The exercise of calm, informed judgment by members of the jury is essential to the proper enforcement of the law. *Sinclair* v. *United States* (1929), 279 U.S. 749, 765. Unusual security measures carry obvious implications even to the most fair-minded jurors. *Woodards* v. *Maxwell* (S.D. Ohio E.D. 1969), 303 F. Supp. 690.

In the instant cause, the trial setting within the confines of the penitentiary definitely affected the jury's impartiality.

The defendants sought to impose the defense of duress, which would mandate that the conditions of the prison itself and the credibility of prison officials become integral elements for the jury's consideration.

Judge Stephenson, in the opinion in the Court of Appeals, noted this effect upon the jurors when he stated:

"It is evident that in most criminal trials which arise out of prison life, especially in escape cases, defenses such as duress or self-defense are presented which inextricably, to some degree, put the prison itself on trial. The facts and circumstances upon which the alleged justification by the accused is predicated call into question the institution and society existing therein. Typically, administrators, prison officials and employees are called to testify, their character thus thrown into issue. To the extent that internal policies of the prison itself and the credibility of the personnel of the prison appear as factual matters of probable relevance to issues presented to a jury, the neutrality of the prison as a place of trial has been, to that extent, compromised.

"***It is reasonable to assume that the jurors in a criminal trial in a penitentiary are aware that their personal safety while within the institution lies with the prison administrators and personnel. *By being required to place their trust in the prison authorities, it is not unrealistic to view this as a subtle, even if sub-conscious threat to the impartiality of each juror, especially when those protecting them are assailed from the witness stand.*" (Emphasis added.)

In *Turner* v. *Louisiana* (1965), 379 U.S. 466, the prejudicial impact on the minds of the jurors was also at issue. In that case, the jurors in a criminal trial had to rely on the sheriff's deputies for security, who were also witnesses for the prosecution. Much akin to the Court of Appeals' decision in the instant cause, the court, in *Turner*, noted, at pages 473-474, that:

"***[I]t would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution.***

"***[T]he role that***[the deputies] played***made the association even more prejudicial. For the relationship

was one which could not but foster the jurors' confidence in those who were their official guardians during the entire period of the trial. And Turner's fate depended upon how much confidence the jury placed in these two witnesses."

The impartiality of the jurors is further compromised by the constant view of the scene of the alleged offense by the jurors. In *Kirkland* v. *Archbold* (1953), 68 Ohio Law Abs. 481, the Court of Appeals for Cuyahoga County decided that it was an abuse of discretion to conduct most of a civil trial on the premises which gave rise to the litigation. In the cause *sub judice,* it is a criminal matter rather than a civil case, as in *Kirkland,* and thus even greater protection should be afforded the defendant. Furthermore, the trial in *Kirkland, supra,* was before a judge and not before a jury which is much more apt to be influenced by the physical surroundings, especially in a maximum security prison which has an omnipresent sense of foreboding danger and guilt.

In addition to the above, the Court of Appeals, in *Kirkland,* noted that the lack of proper courtroom environment detracted from a complete and judicious consideration of the issues, thereby compromising the dignity and solemnity of the trial. This issue is also prevalent in the instant cause, because the Court of Appeals, in its opinion, noted that the record does not indicate whether the procedural safeguards of R. C. 2315.02 were adhered to properly. R. C. 2315.02 mandates certain minimum safeguards to protect the jurors from becoming prejudiced.[1] From the above, it is clear that the potential for prejudice is commensurately increased.

Further, appellees Andrews and Lane, in the instant cause, were denied a fair trial, because the inmate witnesses refused to testify during their joint trial. Inmate witnesses are naturally intimidated, especially those who are to testify as to prison conditions, due to fear of reprisal from guards and officials of the prison.

In the case at bar, the appellees purported to raise the

---

[1] R. C. 2315.02 provides, in part, that the jury shall be "conducted in a body under the charge of an officer to such property or place, which shall be shown to them by a person appointed by the court for that purpose. While the jurors are thus absent, no person, other than the person so appointed, shall speak to them on any subject connected with the trial."

defense of duress. In order to properly raise this defense, inmates of the penitentiary would have to testify as to certain jail conditions. In the trial of appellees Andrews and Lane, for example, an inmate, Denver Sturgill, who refused to testify, commented on the reprisals as follows: "Certainly there'd be reprisals, no question about reprisal. It's been going on ever since that last trial." In addition to other inmates who refused to testify, inmate Robert Hunter stated, "* * * I'd like to make a statement to the court. I refuse to testify *in this courtroom* in behalf of the inmates here because I fear *retaliation might come as a result of what I might say in this institution by the officers here."* (Emphasis added.)

The right of a criminal defendant to present evidence in his own defense is fundamental. The United States Supreme Court, in *Washington* v. *Texas* (1967), 388 U.S. 14, stated, at page 19, that:

"The right to offer the testimony of witnesses, and to compel their attendance, if necessary, *is in plain terms the right to present a defense,* the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. * * * This right is a fundamental element of due process of law." (Emphasis added.)

The United States Supreme Court, in *Wolff* v. *McDonnell, supra* (418 U.S. 539), at page 568, also noted the "high risk of reprisal within the institution" in the context of other proceedings held within a prison.

An inmate is more likely to overcome his inhibition about testifying about the conditions of the penitentiary if the trial were held outside the prison walls. It should be evident that holding a trial within a prison for an offense committed within that prison can not be countenanced, especially since the conditions of the prison itself are paramount to the defendant's defense of duress. The need for an open forum would best serve the interests of justice and the criminal defendant who has a fundamental right to have witnesses testify in his behalf.

We therefore hold, without further analysis, that such trials offend due process as being fundamentally unfair because of the inherent potential for prejudice arising therefrom, that prejudice will be presumed, and that such

trials are prohibited by both the federal and state Constitutions. In short, we conclude such a trial setting violates the spirit of neutrality which serves as a cornerstone to modern notions of due process. As has been aptly stated, "the courtroom in Anglo-American jurisprudence is more than a location with seats for a judge, jury, witnesses, defendant, prosecutor, defense counsel and public observers; *the setting that the courtroom provides is itself an important element in the constitutional conception of trial,* contributing a dignity essential to the 'integrity of the trial' process.\*\*\*" (Emphasis added.) *Estes* v. *Texas, supra* (381 U.S. 532, at page 561).

## II.

The right to a public trial is an important, fundamental constitutional guarantee of both the United States and Ohio Constitutions.[2]

The guarantee of a public trial is a cornerstone of our democracy which should not be circumvented unless there are extreme overriding circumstances.

There are at least four policy reasons for safeguarding the need for public trials: (1) A public trial serves as an effective restraint upon a possible abuse of power (*In re Oliver* [1948], 333 U.S. 257); (2) a public trial assures testimonial trustworthiness by inducing fear of testimony falsely given (6 Wigmore on Evidence [Chadbourn Rev. 1976], Section 1834); (3) a public trial makes the proceedings known to a possible material witness who might otherwise be unknown to the parties (*Tanksley* v. *United States* [C.A. 9, 1944], 145 F. 2d 58; *United States, ex rel. Bennett,* v. *Rundle* [C.A. 3, 1969], 419 F. 2d 599); and (4) a public trial allows the public to learn about the functioning of their government (*United States* v. *Kobli* [C.A. 3, 1949], 172 F. 2d 919).

[2] The relevant constitutional provisions, in pertinent part, are as follows:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial\*\*\*." Sixth Amendment to the United States Constitution.

"In any trial, in any court, the party accused shall be allowed to\*\*\*have\*\*\*a speedy public trial\*\*\*." Section 10, Article I, Ohio Constitution.

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay." Section 16, Article I, Ohio Constitution.

120

The necessity for a public trial was previously discussed by this court in *State* v. *Hensley* (1906), 75 Ohio St. 255, at page 264, wherein the court noted:

"***The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and the importance of their functions***."

Without inflating the Constitution to impermissible limitations, the courtroom setting in the cause *sub judice* can not be held proper. The penitentiary is a maximum security institution which has incarcerated individuals who have been convicted of the most heinous crimes. The inhibition to public attendance at a trial within a prison unquestionably discourages the vast majority of the general public from attending—one of the jurors admitted to having the "willies" during a prior visit to the penitentiary. In addition to the initial fear of entering a maximum security correctional facility, there were extensive physical and electronic admittance procedures which resulted in temporary confiscation of personal belongings, extensive waiting periods, partial strip searches and additional security clearances at various junctures which were offensive to the public and to the officers of the court.

Notwithstanding the above impediments, a sign on the pseudo-courtroom door which stated, "No One Is To Enter Here At Any Hours," would definitely dissuade the spectator from entering.

The trial court's efforts to encourage the atmosphere of a public trial at the penitentiary were simply ineffective to overcome the constitutional deficiencies for holding trial at a maximum security prison for an offense committed within that same institution. The court, in *State* v. *Hensley, supra,* commented on the notion of a public trial when it stated, at page 262:

"***The term 'public,' in its enlarged sense, takes in the entire community, the whole body politic, and a public trial means one which is not limited or restricted to any particular class of the community, but is open to the free observation of all.***"

The right to a public trial is rudimentary in our judicial system, but, as with most rights, it is not absolute, being subject to varying underlying policy considerations. The general rule is that the exclusion of the public should be applied sparingly. *United States, ex rel. Smallwood,* v. *LaValle* (E.D. N.Y. 1974), 377 F. Supp. 1148. Only in the most unusual circumstances have courts upheld deviation from the defendant's right to a public trial. *United States* v. *Eisner* (C.A. 6, 1976), 533 F. 2d 987 (protection of a witness), and *Stamicarbon, N.V.* v. *American Cyanamid Co.* (C.A. 2, 1974), 506 F. 2d 532 (protection of trade secrets).

Although it is not the normal procedure to hold a trial in a situs other than a public courtroom, similar attempts with less constitutionally offensive surroundings have been held in violation of the defendant's right to a public trial. *People* v. *Schoonmaker* (1971), 65 Misc. 2d 393, 317 N.Y. Supp. 2d 696 (arraignment and plea inside police barracks voided); *Jones* v. *Peyton* (1967), 208 Va. 378, 158 S.E. 2d 179 (trial behind closed doors of judge's chambers considered constitutionally offensive).

In *State, ex rel. Varney,* v. *Ellis* (1965), 149 W. Va. 522, 142 S.E. 2d 63, which is factually similar to the instant cause in regard to the place where the trial was held, the defendant was placed in the county jail on a charge of driving while intoxicated. The following morning, the defendant was removed from the jail cell and taken to the jailer's office where a purported trial occurred. The Supreme Court of Appeals of West Virginia, noting the state's constitutional provision for a public trial, stated, at page 65, that:

"Holding a trial in the office of the jailer, as was done in the instant case, does not, in out opinion, afford an opportunity for a public trial in the ordinary common-sense acceptation of the term, public trial. * * * The judgment rendered pursuant to such proceeding is therefore void and unenforceable."

Even when a court is burdened with extraordinary and unusual circumstances, such as in the instant cause, the trial should still be held in the solemnity of a courthouse. In *Lasky* v. *Quinlan* (S.D.N.Y. 1976), 406 F. Supp. 265, the court was challenged with similar security considerations

concerning subpoenaed inmates testifying at a trial 80 miles from the prison. The court, in *Laskey,* allowed the action to be decided in the Bankruptcy Court in the locale in which the prison is located. That court, at page 267, stated that:

"* * *[T]he exercise of discretion is in large part based upon a philosophy that justice is often served best by a willingness to bring the seat of justice to the area where the interest of parties may be openly and fully presented to the end that the public interest in the proper administration of justice may be reinforced and strengthened."

By allowing a change in forum to the Bankruptcy Court near the prison, the court circumvented any security difficulties which may have arisen and yet maintained the dignity and solemnity of the proceedings. We find it unassailable that the trials which were held within the confines of the penitentiary for an offense committed within that same institution violate the constitutional guarantee of the right to a public trial.

### III.

By violating due process and the right to a fair and public trial, the legal conclusion is that there is a violation of the defendants' rights to equal protection. In addition to the above, there is a separate and independent violation of equal protection rights by treating these defendants differently from other persons similarly situated without a showing of a compelling state interest.

The defendants, in the instant cause, were treated differently by the court's attempt to administer justice within the confines of the penitentiary. Rather than showing a compelling state interest, the justification was framed for administrative convenience which is clearly insufficient. *Procunier* v. *Martinez* (1974), 416 U.S. 396.

In summary, the totality of all aspects of the defendants' rights which have been abridged has a synergetic effect which does not allow these trials to be constitutionally permissible.

Accordingly, the judgment of the Court of Appeals is affirmed.

*Judgment affirmed.*

HERBERT, W. BROWN, P. BROWN, SWEENEY, and HOLMES, JJ., concur.

CELEBREZZE, C. J., concurs in the judgment only.