OPINION
This matter presents a timely appeal from a jury verdict and judgment rendered upon such verdict by the Belmont County Common Pleas Court, finding defendant-appellant, Donald Harrigan, guilty of felonious assault, in violation of R.C. 2903.11(A)(2), along with his subsequent sentencing thereon.
On September 4, 1996, appellant was indicted by the Belmont County Grand Jury on a charge of felonious assault, along with an attendant specification for a previous conviction of felonious assault. The indictment resulted from events which took place at the White Oak Tavern, located in Belmont County, Ohio. On July 6, 1996, while on parole, appellant went to the White Oak Tavern for drinks. He noticed an old acquaintance, Philip Davis, sitting at the bar. It was alleged that appellant approached Davis, started an argument and then proceeded to stab him five times. Appellant admitted to having a knife with him at the tavern, but denied stabbing Davis.
Upon due deliberation of the evidence and testimony presented at trial, the jury found appellant guilty of felonious assault, a second degree felony. The trial court rendered judgment upon the jury verdict and imposed a definite eight-year incarceration term, the maximum sentence allowed for such an offense. The trial court also imposed an additional, definite ten-year incarceration term pursuant to R.C. 2929.14(D)(2), finding appellant to be a repeat violent offender. The sentences were to be served consecutively. Appellant thereafter filed a motion for new trial which was overruled by the trial court. This appeal followed.
Appellant's court-appointed counsel on appeal filed a no-merit brief on February 12, 1999, pursuant to this court's ruling inState v. Toney (1970), 23 Ohio App.2d 203. In Toney, this court set forth the procedure to be used when counsel of record determines that an indigent's appeal is frivolous. We held, in relevant part:
 "3. Where a court-appointed counsel, with long and extensive experience in criminal practice, concludes that the indigent's appeal is frivolous and that there is no assignment of error which could be arguably supported on appeal, he should so advise the appointing court by brief and request that he be permitted to withdraw as counsel of record.
 "4. Court-appointed counsel's conclusions and motion to withdraw as counsel of record should be transmitted forthwith to the indigent, and the indigent should be granted time to raise any points that he chooses, pro se.
 "5. It is the duty of the Court of Appeals to fully examine the proceedings in the trial court, the brief of appointed counsel, the arguments pro se of the indigent, and then determine whether or not the appeal is wholly frivolous.
"* * *
 "7. Where the Court of Appeals determines that an indigent's appeal is wholly frivolous, the motion of court-appointed counsel to withdraw as counsel of record should be allowed, and the judgment of the trial court should be affirmed." (Toney, supra at syllabus)
Appellant's court-appointed counsel identified five possible assignments of error on appeal as follows: 1) ineffective assistance of counsel; 2) inadequate identification of evidence; 3) lack of separation of witnesses; 4) maximum sentencing; and, 5) trial in a jail courtroom. This court allowed appellant thirty days to raise any additional assignments of error, however, no brief or additional assignments of error were filed by appellant. Appellant's court-appointed counsel also filed a motion to withdraw. This court, therefore, must review the record and transcript of the trial court's proceedings to determine whether the within appeal is wholly frivolous.
Appellant's first possible assignment of error is that his defense counsel at trial was ineffective. In Strickland v.Washington (1984), 466 U.S. 668, the United States Supreme Court established the standard for determining whether defense counsel's assistance was ineffective. Appellant must "* * * identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment."Strickland at 690. A reviewing court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. Strickland at 690. The trial court's judgment will not be set aside unless defense counsel's error affected the judgment. Strickland at 691. In State v. Bradley (1989), 42 Ohio St.3d 136, the Ohio Supreme Court stated at paragraphs two and three of the syllabus, respectively:
 "Counsel's performance will not be deemed ineffective unless and until counsel's performance is proved to have fallen below an objective standard of reasonable representation and, in addition, prejudice arises from counsel's performance. (Citation omitted).
 "To show that a defendant, has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different."
Upon reviewing the record and transcript in its entirety, we find no evidence to establish that defense counsel's assistance was professionally unreasonable. Furthermore, it cannot be said that defense counsel's assistance prejudiced appellant's defense. Plaintiff-appellee, State of Ohio, presented four eyewitnesses who identified appellant as the man they saw stab Davis. (Tr. 41-42, 77, 109, 154). The arresting officer stated that when he arrived at the scene, appellant was in the tavern with Davis. (Tr. 168). The officer testified that when he ordered appellant to reveal his hands, appellant walked quickly towards him shouting obscenities. (Tr. 169). Appellant did not stop until the officer had backed up to the door and, with his gun pointed at appellant, shouted, "You stop right there or I'm going to blow your head off." (Tr. 170-171). In appellant's pocket, the officer found a knife that appeared to have been washed, the blade of which contained traces of blood. (Tr. 173-175).
There was overwhelming evidence presented at trial from which the jury could have found appellant guilty of felonious assault beyond a reasonable doubt. Thus, any alleged ineffectiveness in defense counsel's assistance did not constitute reversible error.
Appellant's first possible assignment of error is found to be without merit.
Appellant's second possible assignment of error is that there was inadequate authentication of evidence. Appellant's defense counsel objected to the admission of appellee's fourth exhibit, a buck knife, arguing that no chain of custody was established as the evidence was not identified with a particular mark when it was confiscated, and others had access to the locker in which it was placed. (Tr. 206). Defense counsel contended the testimony revealed that no substance resembling blood could be seen on the knife when it was confiscated. (Tr. 206). A lab report, however, later confirmed that traces of blood were on the knife. (Tr. 175). Defense counsel concluded that the integrity of the exhibit was compromised. (Tr. 206-207).
Evid.R. 901(A) provides:
 "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."
In State v. Black (Dec. 12, 1994), Mahoning App. No. 93 C.A. 38, unreported, this court recognized a portion of the syllabus from In re Lemons (1991), 77 Ohio App.3d 691, which stated:
 "1. State bears burden of establishing proper chain of custody of evidence, but it is not absolute duty.
 "2. In order to meet burden of establishing proper chain of custody of evidence, state need not negate all possibilities of substitution or tampering.
 "3. Chain of custody of evidence can be established by direct testimony or inference.
 "4. Issue of whether there exists break in chain of custody of evidence is determination left up to trier of fact.
 "5. Any break in chain of custody of evidence goes to weight afforded evidence, not to its admissibility."
In the case at bar, the arresting officer obtained the knife from appellant's back pocket at the scene of the crime. (Tr. 172-173). The knife was in the officer's possession until it was sent to the Bureau of Criminal Investigations (BCI) lab. (Tr. 174). After a report was prepared and a mark was made on the exhibit, BCI returned the knife to the arresting officer. (Tr. 175). The knife was then placed in the evidence locker where it remained until court proceedings commenced in this case. (Tr. 175-176).
A trial court's determination that evidence has been properly authenticated will be reversed only when an abuse of discretion is shown. State v. Twyford (Sept. 25, 1998), Jefferson App. No. 93-J-13, unreported. Clearly either police officials or BCI was in possession of the knife in question from the time it was confiscated until court' proceedings commenced. (Tr. 173-176) While the BCI lab found blood on the knife despite testimony that no blood was on the knife when it was confiscated, the sample found was small. (Tr. 175). The BCI report stated: "Blood was identified on both sides of the blade * * * but the sample is insufficient for further analysis." (Tr. 175). The arresting officer testified that when he confiscated the knife, it did not appear to have blood on it, but it was wet. (Tr. 173-174). He further testified that when he arrived at the scene, appellant was standing near the restroom. (Tr. 173)
It was well within the purview of the jury to find appellee's theory that appellant washed the blood off of the knife before the police arrived at the scene, plausible. (Tr. 207). Furthermore, appellee produced sufficient evidence to establish the chain of custody of the knife and the absence of evidence tampering. As such, the trial court did not abuse its discretion when it admitted the knife into evidence.
Appellant's second possible assignment of error is found to be without merit.
Appellant's third possible assignment of error is that witnesses did not remain separated at trial. At the onset of trial, the court granted appellant's motion for a separation of witnesses. (Tr. 11). At one point during trial, appellant moved for a mistrial because he claimed that a woman was leaving the courtroom and discussing the trial with witnesses who were about to testify. (Tr. 177-178). Two witnesses testified that a certain woman repeatedly entered the courtroom only to leave and converse with the other witnesses. (Tr. 180-182). They testified, however, that they did not hear what was discussed between this woman and the witnesses. (Tr. 180-183). The trial court overruled appellant's motion stating, "I observed the woman in the courtroom. I didn't observe any automatic synchronisity between her departures and witnesses leaving. Based upon that observation, coupled with this witness's testimony that she does not know what was said nor did she overhear what was said, the motion for mistrial is overruled." (Tr. 185)
Granting a mistrial is within the broad discretion of the trial court. State v. Reynolds (1988), 49 Ohio App.3d 27, 33. Considering the trial court's reasoning, we cannot find that the trial court abused its discretion in overruling appellant's motion for a mistrial.
Appellant's third possible assignment of error is found to be without merit.
Appellant's fourth possible assignment of error is that the trial court erred in imposing the maximum sentence. R.C. 2929.14
(C) states:
 "Except as provided in division (G) of this section or in Chapter 2925. of the Revised Code, the court imposing a sentence upon an offender for a felony may impose the longest prison term authorized for the offense pursuant to division (A) of this section only upon offenders who committed the worst forms of the offense, upon offenders who pose the greatest likelihood of committing future crimes, upon certain major drug offenders under division (D)(3) of this section, and upon certain repeat violent offenders in accordance with division (D)(2) of this section."
According to R.C. 2929.14(D)(2)(a):
 "* * * If the court finds that the repeat violent offender, in committing the offense, caused any physical harm that carried a substantial risk of death to a person or that involved substantial permanent incapacity or substantial permanent disfigurement of a person, the court shall impose the longest prison term from the range of terms authorized for the offense under division (A) of this section."
In the case at bar, the trial court found that appellant was a repeat violent offender. (Judgment Entry filed April 1, 1997, 3). Furthermore, the trial court found that "[t]he victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense." (Judgment Entry filed April 1, 1997, 1).
Under R.C. 2929.19(B)(2), if a trial court imposes the maximum term or consecutive terms, it must "make a finding that gives its reason" for the imposition of the maximum or consecutive terms. In this case, the trial court made findings and gave reasons for its imposition of the maximum sentence. The reasons, in part, were as follows: 1) the victim's injuries were exacerbated because of his physical or mental condition or age; 2) the victim suffered serious physical, psychological, or economic harm as a result of the offense; 3) at the time of committing the offense, appellant was under release from confinement or under a sanction or under post-release control; 4) appellant had a history of criminal convictions; and 5) appellant showed no remorse for his conduct. (Judgment Entry filed April 1, 1997, 1-4). Because the trial court found appellant to be a repeat violent offender and gave reasons for the imposition of its sentence, it was not improper for the trial court to require that appellant serve the maximum incarceration term.
Appellant's fourth possible assignment of error is found to be without merit.
Appellant's fifth possible assignment of error is that the trial was conducted in a jail courtroom. This court previously addressed the same issue in State v. Hocker (Feb. 3, 1999), Belmont App. No. 97-BA-20, unreported. The defendant in Hocker
was convicted of aggravated felonious assault. On appeal, he alleged that his right to a fair and public trial by an impartial jury was violated because the courtroom was located at the Belmont County Jail. He claimed that the jurors' ability to remain impartial was hindered because they were in a jail that did not provide proper facilities. The defendant also claimed that the jail setting had a chilling effect on the public's ability to attend the trial. He relied on State v. Lane (1979),60 Ohio St.2d 112, in which the Ohio Supreme Court determined that by holding a trial in an institution for an offense committed within that institution, the constitutional right to a fair trial is abridged in three ways: the presumption of innocence which must attach to the criminal defendant is eroded; there is a major interference with the jury's ability to remain impartial; and the right of the defendant to obtain witnesses is chilled.
We distinguished Hocker from Lane as follows:
 "In Lane, supra, the defendant was tried in a makeshift courtroom, located in a maximum security prison, for an offense he committed while incarcerated in that prison. In the case at bar, [Hocker's] trial was held in a courtroom, located inside the Belmont County Jail, that was specifically designed and operated for such purpose. People who entered the courtroom were subjected to security procedures that have been implemented in courtrooms throughout the State of Ohio. These procedures have not been held to impermissibly affect a defendant's right to a fair trial. * * * The witnesses that testified at [Hocker's] trial were testifying to events which occurred outside of the county jail walls. Courtroom No. 3 is located only four miles from the Belmont County Courthouse and is not on the outskirts of civilization as was the case in Lane, supra." (Hocker, supra).
The atmosphere surrounding appellant's trial in this case was the same as that in Hocker. Therefore, the location of appellant's trial was not improper.
Appellant's fifth assignment of error is found to be without merit.
Consistent with Toney, supra, this court finds the within appeal to be wholly frivolous and grants appellate counsel's motion to withdraw.
The judgment of the trial court is affirmed.
Donofrio, J., Vukovich, J., concurs.
APPROVED:
 _______________________________ EDWARD A. COX, PRESIDING JUDGE