Murray, Appellee, *v.* Marbro Builders, Inc., Appellant.

[Cite as Murray v. Marbro Bldrs., Inc. (1977),
53 Ohio App. 2d 1.]

(No. CA 613—Decided July 13, 1977.)

Mr. *Lawrence W. Carlier* and Mr. *John D. Erhardt,*
for appellee.

Messrs. *Lindhorst, Dreidame,* Mr. *James L. O'Connell*
and Mr. *Albert Wettstein,* for appellant.

PALMER, J. In March 1973, plaintiff-appellee Carl Murray, a plumbing contractor, contracted with defendant-appellant Marbro Builders, Inc. (Marbro), to install all sewer systems, water lines and concrete curbing in a subdivision being developed by Marbro for an agreed price of $150,265.38. The contract recited that time was of the essence in the performance of the contract, and specified a completion date of November 1, 1973, for all work undertaken by Murray. Murray commenced performance of the contract in May 1973, and immediately encountered numerous delays in construction occasioned by subsurface rock formations and inclement weather. Work on the project nevertheless proceeded, although at a pace much slower than was originally anticipated, until August 29, 1973, when an inspector from the Clermont County Sanitary Engineering Department ordered the work to be stopped, citing Murray's failure in numerous instances to conform construction of the sanitary sewer system to county depth specifications as the cause. Murray thereafter performed no additional work under his contract with Marbro, and was replaced several months later by another plumbing contractor, who corrected the defects in Murray's construction of the sewer line and completed the substantial portion of work left unfinished by Murray. In May 1974, Murray, who had received payments totalling $3,172.66 under the contract, brought this action to recover the additional reasonable value of labor and materials conferred by Murray's partial execution of the construction contract. Marbro, in its answer, denied Murray's claim and asserted a counterclaim for various damages allegedly resulting from Murray's breach of his contractual obligation. Following trial without a jury, the trial court awarded a judgment to Murray, on his complaint, for $22,434.04, and a judgment to Marbro, on its counterclaim, in the amount of $5,800. Marbro timely filed this appeal, presenting three assignments of error for review.

Marbro, in its first assignment, asserts that the judg-

ment for Murray is contrary to law, arguing first that Murray's breach of contract, prior to the performance of any substantial part thereof, precludes his recovery against Marbro. Indeed, a substantial body of early Ohio case law established the general rule that where a party has partially but not substantially performed a contract, and the failure to perform the balance of the contract is not excused, no recovery can be had upon the contract, even upon the theory of *quantum meruit.* See *e. g., Mehurin* v. *Stone* (1881), 37 Ohio St. 49; *Abbott* v. *Inskip* (1875), 29 Ohio St. 59; *Goldssmith* v. *Hand* (1875), 26 Ohio St. 101. See also *Mays* v. *Hartman* (1947), 77 N. E. 2d 93.

This court, however, is inclined to follow the more modern and, we believe, more equitable rule in conformity with that proposed by our brothers in the Eighth Appellate District of Ohio in *Kirkland* v. *Archbold* (1953), 68 Ohio Law Abs. 481. After briefly examining the history of the traditional rule in Ohio law, the *Kirkland* court determined that, as to defaulting contractors:

"An ever-increasing number of decisions of courts of last resort now modify the severity of this rule and permits defaulting contractors, where their work has contributed substantial value to the other contracting party's property, to recover the value of work and materials on a quantum meruit basis, the recovery being diminished, however, to the extent of such damage as the contractor's breach causes the other party. These decisions are based on the theory of unjust enrichment. The action is not founded on the broken contract but on a quasi-contract to pay for the benefits received, which cannot be returned, diminished by the damages sustained because of the contractor's breach of his contract. * * *

"The drastic rule of forfeiture against a defaulting contractor who has by his labor and materials materially enriched the estate of the other party, should, in natural justice, be afforded relief to the reasonable value of the work done, less whatever damage the other party has suffered." *Id.,* at 485, 486.

4

See also 5A Corbin on Contracts 11, Sections 1124-1125 (1964); 12 Williston on Contracts 220, Sections 1473, 1475 (3d ed. 1970).

In the instant case, Murray managed to complete, in a workmanlike fashion, certain sections of sewer line which ultimately were incorporated into the subdivision sewer system delivered by Marbro. Murray's expenditure of the labor and materials involved in such construction thus conferred a substantial and permanent benefit upon Marbro which, in the absence of any payment therefor, Marbro should not in justice retain. We conclude, therefore, that Murray was entitled to recover the reasonable value of the improvements made upon the subdivision property in partial performance of his contract with Marbro, reduced by any damages suffered by the latter as a result of Murray's subsequent breach. To the extent that certain dicta in *Mays* v. *Hartman, supra,* might require us to reach a contrary result, we decline to follow the statement of the rule therein contained.

Marbro additionally argues that, even if Murray is entitled to relief on the basis of *quantum meruit,* the judgment in the instant case, which was computed at rates varying from $8 to $12.50 per lineal foot of completed sewer line, improperly awarded to Murray a sum greater than he would have received for equivalent work under the terms of the contract, which, Marbro contends, fix the rate of compensation at $7.50 per lineal foot of pipe laid.

However, while recognizing the general rule that a defaulting contractor is permitted to recover no more for his services than would be allowed under the contract (11 Ohio Jurisprudence 2d 491, Contracts, Section 232), we find no error in the amount awarded to Murray in the instant case. Thus, the language of the contract itself, which merely recites the lump sum contract price and provides for payment thereof "as the work progresses" furnishes no basis for Marbro's assumption that the rate of compensation owed to Murray may be determined by simply dividing the total contract price by the lineal footage of con-

struction work to be performed.[1] To the contrary, the record reflects that, due to the recognized varying geological characteristics of the subdivision property, certain phases of construction would require the expenditure of far more time and effort than others. Moreover, there is abundant evidence in the record that those areas in which Murray successfully completed installation of the sewer lines contained unusually severe rock conditions not encountered elsewhere in the construction project.

Thus, the trial court could properly conclude that the amount of relief requested by and ultimately awarded to Murray in the instant case was, in fact, within the limits[2] of the contract price to be paid for this extraordinarily difficult part of the construction work. It follows, then, that the judgment granted Murray in the proceedings below was within contemplated parameters of compensation and was otherwise reasonable, and that the first assignment of error must be overruled.

Marbo, in its second assignment of error, essentially challenges the judgment of $5,800 awarded in its favor as contrary to the manifest weight of the evidence. The trial court, in computing the award, determined that Marbro was entitled to recover (1) $4,000 for repairs to the sewer lines defectively installed by Murray; (2) $1,420 for re-engineering work occasioned by Murray's faulty construction; (3) $350 for repair of certain water lines to county specifications; and (4) $30 for two building permits obtained by Marbro for Murray's construction work. Marbro argues that the trial court improperly disregarded certain additional items of damage, consisting of increased financing and street paving charges resulting from Murray's con-

---

[1]Although nowhere expressed as the agreed contract between Marbro and Murray, Marbro calculates the average per foot cost at $7.50 by adding the total proposed lineal footage of sewer lines as shown on engineering plans, by the total contract price.

[2]Marbro's own expert witness testified that the reasonable value of the work actually performed by Murray, because of the abnormally difficult rock formations through which it ran, was $25 per lineal foot, a figure considerably in excess of that used by the trial court in giving judgment.

struction delays as well as the increased cost to Marbro of completing the construction work left unfinished by Murray, which allegedly were established by uncontroverted evidence at trial.

As to the first of these claims, our examination of the record convinces us that the evidence adduced in support thereof at trial was insufficient to demonstrate, to the requisite degree of certainty, that the increased financing and paving costs claimed by Marbro resulted from Murray's failure to timely perform the construction contract. To the contrary, the record contains credible evidence of probative value which, if believed by the trier of facts, would establish that numerous delays, in addition to those occasioned by Murray's breach, prevented Marbro from the scheduled completion of its work on the subdivision, and that such work remained unfinished even as of the date of trial. Thus, the trial court did not err in refusing to award the damages claimed by Marbro for delay in construction allegedly resulting from Murray's non-performance of the agreement.

However, the case is otherwise with respect to those damages claimed by Marbro for the additional cost of completing the work which Murray had contracted to perform. The rule is well settled that, in an action based upon a subcontractor's breach of a construction contract, a contractor is entitled to recover, as part of his damages, the difference between the contract price and the actual cost of completing the work required under the contract. See, *e. g., Spraggins* v. *Ronke* (1959), 160 N. E. 2d 334, *Reinhard* v. *Bertram* (1956), 101 Ohio App. 225; *Schwartz* v. *Baker* (1950), 59 Ohio Law Abs. 274.

In the instant case, the uncontroverted testimony of Marbro's witnesses and documentary evidence submitted in support thereof clearly established that, exclusive of those amounts paid for the repair of Murray's faulty construction, Marbro paid in excess of $160,000 to Murray and to his successor for the completion of the same work which Murray had agreed to perform for $150,265. Moreover, there is nothing in the record to indicate that the

evidence was the product of obvious fabrication, or was otherwise patently incredible. The trial court's findings of fact and conclusions of law do not indicate that this rule of damages played any part in arriving at the judgment entered by the trial court, thus requiring us to conclude that the trial court erred in failing to consider the recoupment to Marbro of the increased cost of completing the subject construction contract, to which Marbro was entitled as a matter of law. To that extent, we sustain Marbro's second assignment of error.

Marbro, in its third assignment, asserts that the trial court erred in failing to make any disposition of a claim which, although not raised by the pleadings, was nevertheless tried by the implied consent of the parties pursuant to Civ. R. 15(B), *viz.*, the right to payment for or possession of an air hammer sold to Murray by Marbro. Thus, the record reflects that Marbro delivered the subject air hammer to Murray, who, upon finding the equipment defective, refused to return it to Marbro or to make any payment therefor. No objection was made to the introduction of this testimony, and, therefore, the claim which it presents must be treated in all respects as if it had been raised in the pleadings. Civ. R. 15(B). Thus, we conclude that Marbro is entitled to recover from Murray either the agreed purchase price for the hammer of $2,000 or possession of the equipment itself, and, accordingly, we sustain Marbro's third assignment of error.

The judgment of the trial court is affirmed in part and reversed in part, and the cause is remanded for further proceedings solely on the issue of additional damages owed to Marbro for the increased costs to Marbro of completing the contract breached by Murray. It is also the order of this court that Murray return possession of the aforementioned air hammer to Marbro, or, in the alternative, that a judgment for $2,000 be entered by the trial court against Murray in favor of Marbro in payment therefor.

*Judgment affirmed in part and reversed in*
*part and cause remanded.*

SHANNON, P. J., and KEEFE, J., concur.