### WEST COAST INDUSTRIAL RELATIONS ASSOCIATION, INC., Appellant and Cross–Appellee,

v.

### SUPERIOR BEVERAGE GROUP, LTD., et al., Appellees and Cross–Appellants.

[Cite as *W. Coast Indus. Relations Assn., Inc. v. Superior Beverage Group, Ltd.* (1998), 127 Ohio App.3d 233.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 95 C.A. 65.

Decided April 13, 1998.

Charles L. Richards, for appellant and cross-appellee.

Richard N. Selby and James L. Messenger, for appellees and cross-appellants.

Cox, Judge.

This matter presents a timely appeal and cross-appeal from a decision rendered by the Mahoning County Common Pleas Court, granting judgment in favor of plaintiff-appellant and cross-appellee, West Coast Industrial Relations Association, Inc. ("West Coast"), on its complaint and judgment in favor of West Coast on the counterclaim filed by defendants-appellees and cross-appellants Superior Beverage Group, Ltd. et al.

In the spring of 1989, appellee Superior Beverage Group, Ltd. ("Superior"), hired West Coast, a California corporation, to negotiate a series of labor contracts with its employees, who were members of Teamsters Local 377. Fred Long, West Coast's president, was a labor negotiator and an attorney licensed to practice law only in the state of Michigan. The agreement between the parties regarding West Coast's services was that Long would earn $150 per hour and the associates working with him would earn $100 per hour.

West Coast, along with Long, was also retained by Superior's competitor, R.L. Lipton, to simultaneously negotiate labor contracts with Teamsters Local 377 on R.L. Lipton's behalf. Superior and R.L. Lipton agreed to split the fees and expenses of all negotiations. This case is predicated solely upon the unpaid fees allegedly due to West Coast from Superior in the amount of $63,403.72. R.L. Lipton is not a party herein, as it paid West Coast in full for services rendered.

Problems arose during negotiations. Superior's contract with Teamsters Local 377 was due to expire on May 31, 1989. Since an agreement had not been reached by that date, Teamsters Local 377 and Superior mutually agreed to extend the contract during the negotiations. While the negotiations with Teamsters Local 377 were taking place, Superior was also involved in negotiations to purchase Diehl Distributing in Akron, Ohio. This acquisition would benefit Superior and complement its beer distribution in the Akron area.

Being aware of the negotiations with Diehl Distributing, Long advised John Antonucci, Superior's president, that he should inform Teamsters Local 377 that Superior was selling to Diehl Distributing rather than purchasing it and that as a result, all jobs would be lost to Akron. The purpose of this tactic was to give Superior an advantage in bargaining power by threatening the loss or move of jobs. Upon receiving this advice from Long and upon further being advised by Long that an impasse in negotiations was imminent, Antonucci decided to obtain a second opinion. Ultimately, Antonucci hired a labor negotiator from Pittsburgh, Pennsylvania, attorney Daniel Shapira.

While Long was on vacation, Antonucci asked Shapira to continue the negotiations. After three sessions with Teamsters Local 377, a tentative collective bargaining agreement was reached. Being dissatisfied with West Coast's perfor-

mance in failing to settle the labor dispute, Superior refused to pay West Coast's bill in the amount of $63,403.72.

On October 10, 1989, West Coast filed a complaint against Superior and Antonucci, seeking to recover its fees and expenses. Superior and Antonucci thereafter filed a motion to dismiss, which the trial court granted on June 14, 1990, finding that West Coast lacked standing to bring a lawsuit in the state of Ohio. Following an appeal of the trial court's decision, this court reversed and remanded this matter to the trial court for further proceedings. On August 21, 1991, Superior and Antonucci filed their answer to West Coast's complaint, along with a counterclaim for recovery of the fees and expenses that it had previously paid to West Coast.

Upon the resolution of various pretrial motions, this matter proceeded to bench trial on October 11, 1994. Following due deliberation of the evidence and testimony presented, the trial court filed its ruling on January 13, 1995, granting judgment in favor of West Coast in the amount of $11,843.39, plus costs, on its complaint and judgment in favor of West Coast on the counterclaim filed by appellees. West Coast then filed a motion for new trial, along with a request for findings of fact and conclusions of law. By judgment order filed February 27, 1995, the trial court denied the motion for new trial and granted the request for findings of fact and conclusions of law, provided that West Coast comply with Civ.R. 52 and file proposed findings within the time set forth in the rule. West Coast failed to do so, and, by order filed March 7, 1995, the trial court denied West Coast's request for findings of fact and conclusions of law. The within appeal and cross-appeal followed.

Appellant, West Coast, sets forth two assignments of error on appeal.

Appellant's first assignment of error alleges:

■ "The trial court erred in failing to award plaintiff-appellant the sum of $63,407.32 in fees and expenses, plus interest thereon from October 1, 1989, on the basis of an express contract."

Appellant argues that it clearly established that an express agreement for services regarding labor negotiations existed with appellee Superior. Appellant states that Superior admitted the existence of the agreement and paid appellant's invoices for services rendered from mid-March 1989 through June 1989. Appellant cites a number of Ohio cases in which it has been determined that a contract is formed by an intent to contract and exchange of promises supported by consideration. See, for example, *Cuyahoga Cty. Hosp. v. Price* (1989), 64 Ohio App.3d 410, 581 N.E.2d 1125. Appellant maintains that it proved the performance of its services from mid-March 1989 through August 19, 1989 and,

therefore, the trial court erred in failing to award the full amount of the fees and expenses requested under the terms of the agreement with Superior.

Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Gerijo, Inc. v. Fairfield* (1994), 70 Ohio St.3d 223, 638 N.E.2d 533. Further, the trier of fact is in the best position to assess the credibility of the witnesses presented at trial and to determine the weight to be afforded the evidence offered. *Walworth v. B.P. Oil Co.* (1996), 112 Ohio App.3d 340, 678 N.E.2d 959, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212.

It is an implied condition of a contract for employment that a person under the contract must exercise reasonable care and diligence in performing tasks. *Am. Ins. Group v. McCowin* (1966), 7 Ohio App.2d 62, 36 O.O.2d 153, 218 N.E.2d 746. Appellees argue in this matter that West Coast gave bad advice which could have led to the commission of unfair labor practices. Appellees further assert that West Coast gave incompetent advice concerning the intent to deceive Teamsters Local 377 with regard to the purchase and sale of Diehl Distributing and with regard to declaring an impasse in negotiations. Appellees point out that expert testimony was offered to prove the nature and extent of West Coast's incompetence.

In the case at bar, the trial court was presented with a complex labor dispute and received testimony from the key parties involved, along with expert witnesses. The trial court found the testimony presented by the principals to be incredible. Although the trial court determined that there was an agreement for services between West Coast and Superior and further found that West Coast was not discharged from performing those services, it noted that West Coast did not recognize that an immediate labor contract and more harmonious labor relations were Superior's prime directives.

The trial court also pointed out that Long insisted on taking a vacation during a critical stage of labor negotiations. Nonetheless, the trial court stated that because West Coast participated, at least minimally, in continued labor negotiations and the final labor contract which was reached included many provisions that Long had drafted, although modified, some compensation was due to West Coast.

This court will not substitute its judgment for that of the trial court when it is clear that the decision was supported by some competent, credible evidence going to all essential elements of the case. The trial court's decision to award West Coast the sum of $11,843.39 based upon the theory of *quantum meruit* is supported by and conforms to the evidence presented at trial.

Appellant's first assignment of error is found to be without merit.

Appellant's second assignment of error alleges:

"The trial court erred in awarding plaintiff-appellant the sum of $11,843.39 under the theory of quantum meruit."

Appellant argues that since there was an express contract between the parties, the trial court was precluded from rendering judgment based upon the theory of *quantum meruit.*

In a situation in which there has been partial, but nonetheless substantial, performance by a party to a contract, *quantum meruit* may be used to make an award. *Murray v. Marbro Builders, Inc.* (1977), 53 Ohio App.2d 1, 7 O.O.3d 8, 371 N.E.2d 218. The trial court clearly found that although it believed that West Coast substantially performed its obligations pursuant to its agreement with Superior, there had only been partial performance. As previously stated, there was competent, credible evidence presented at trial to support the trial court's judgment award in favor of West Coast based upon the theory of *quantum meruit.*

Appellant's second assignment of error is found to be without merit.

Appellees, Superior Beverage Group et al., present four assignments of error on cross-appeal.

Appellees' first assignment of error alleges:

"The trial court erred in awarding plaintiff cross-appellee West Coast Industrial Relations Association, Inc. $11,843.39 on the theory of quantum meruit after having determined that plaintiff cross-appellee West Coast Industrial Relations, Inc. was not entitled to recover on the theory of express contract because of its breach of that express contract."

Appellees assert that West Coast's performance in this matter was not substantial, especially in light of the fact that attorney Daniel Shapira completed the labor contracts after only three negotiating sessions. Appellees also point out that they paid the total sum of $70,812.71 to West Coast for questionable services and advice prior to discontinuing payments. Therefore, appellees conclude that the trial court erred in awarding judgment to West Coast on the basis of *quantum meruit.*

As previously stated under appellant's second assignment of error, the trial court clearly found that West Coast had substantially performed its obligations pursuant to its agreement with appellees; however, there had only been partial performance. As a result of this finding, the trial court did not err in awarding judgment in favor of West Coast on the basis of quantum meruit. See *Murray,*

*supra.* The trial court had sufficient, competent credible evidence before it from which to reach its decision.

Appellees' first assignment of error on cross-appeal is found to be without merit.

Appellees' second assignment of error alleges:

■ "The trial court erred in not granting judgment to defendants cross-appellants Superior Beverage Group, Ltd. and John Antonucci on the theory that the contract with plaintiff cross-appellee West Coast Industrial Relations Association, Inc. was an illegal and unenforceable contract for the performance of services which constitute the unauthorized practice of law."

Appellees contend that West Coast's services constituted the unauthorized practice of law and, thus, West Coast was precluded from recovering either full or part of the fees and expenses requested. Appellees state that West Coast itself referred to its contract with appellees as being a contract for legal services and Long's hourly rate as being reasonable for an attorney in a labor relations area, in its memorandum in support of its motion for summary judgment.

Appellees cite *Akron Bar Assn. v. Greene* (1997), 77 Ohio St.3d 279, 673 N.E.2d 1307, for the propositions that a corporation is not authorized to practice law and that the practice of law includes the preparation of contracts and giving of advice concerning the law. Appellees offer that in the case at bar, West Coast advised on certain legal matters regarding labor laws and billed appellees for work completed involving legal issues relating to Diehl Distributing. Appellees assert that neither Long nor his associates, as West Coast's employees, were licensed to practice law in the state of Ohio and, therefore, West Coast engaged in the unauthorized practice of law. As a result, appellees conclude that its agreement with West Coast was unenforceable.

Appellant, West Coast, responds that a labor relations consultant is not engaged in the practice of law while negotiating a labor dispute governed by the National Labor Relations Board. Counsel for appellees admitted in his opening argument to the trial court that all activities relating to this cause of action were governed by the National Labor Relations Board. Appellees' second labor negotiator, attorney Daniel Shapira from Pittsburgh, Pennsylvania, was not licensed to practice law in the state of Ohio and testified that the performance of his duties as a labor negotiator did not constitute the unauthorized practice of law.

The trial court summarily overruled appellees' defense regarding the unauthorized practice of law without explanation. Based upon the evidence presented at trial, it cannot be said that West Coast, by and through its employees, engaged in the unauthorized practice of law. The trial court had competent, credible

evidence before it from which to make its decision concerning this issue and, therefore, we will not substitute our judgment for that of the trial court.

Appellees' second assignment of error is found to be without merit.

■ Appellees' third assignment of error alleges:

"The trial court erred in entering judgment against John Antonucci individually."

West Coast sought to recover its fees and expenses not only against Superior, but also against Superior's president, John Antonucci, individually. Appellee Superior Beverage Group is a limited partnership in which M & A Distributing Company is the general partner and MARS Distributing Company and Superior Beverage Company, Inc. are the limited partners. Antonucci, as an officer and majority shareholder of the general partner, was responsible for managing the operations of appellee Superior Beverage Group.

Appellees argue that pursuant to the law governing limited partnerships, only the general partner is liable for a judgment against a limited partnership. See R.C. 1782.19. Appellees therefore contend that M & A Distributing Company would be liable for any judgment rendered against appellee Superior Beverage Group; however, Antonucci would not be liable individually for the obligations of the corporation. See *James G. Smith & Assoc., Inc. v. Everett* (1981), 1 Ohio App.3d 118, 1 OBR 424, 439 N.E.2d 932.

Appellees maintain that West Coast was well aware of the fact that it was being retained by appellee Superior, not Antonucci individually, and directed all invoices for services rendered to appellee Superior. Appellees conclude that the trial court's judgment against Antonucci individually was erroneous. We agree.

West Coast's arguments in support of the proposition that Antonucci should be held personally liable are not supported by the evidence and testimony in this case. All decisions made by Antonucci were clearly made in his capacity as an officer of the corporation that controlled appellee Superior Beverage Group. Furthermore, West Coast offered no evidence at trial which could support piercing the corporate veil with respect to Antonucci and, likewise, did not establish the elements necessary for piercing the corporate veil as enumerated in *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 617 N.E.2d 1075.

Appellees' third assignment of error has merit.

■ Appellees' fourth assignment of error alleges:

"The trial court erred in not admitting defendants' Exhibits 5, 5A, 6, 6A, 7, 8, 9, 11 and 12."

Long was questioned during direct examination concerning whether he had been involved in labor negotiations that resulted in claims of bad faith bargaining and/or charges of unfair labor practices. As a result of Long's negative response, appellees offered nine cases as exhibits to impeach Long's testimony. Although the trial court allowed these exhibits to be marked and introduced into evidence, it withheld ruling on admissibility. The trial court ultimately determined that the exhibits were not admissible pursuant to Evid.R. 403(B).

Appellees argue that the exhibits in question were admissible for the purpose of impeaching Long's testimony regarding West Coast's labor relations record. Appellees take the position that Long attempted to mislead the trial court in this regard and the exhibits offered presented examples of West Coast's involvement in a number of cases in which allegations of bad faith bargaining and/or unfair labor practices were made.

A trial court is to be given broad discretion concerning the admission and exclusion of evidence under Evid.R. 403, and a reviewing court should not disturb the trial court's ruling unless a clear abuse of discretion is established. *Shimola v. Cleveland* (1992), 89 Ohio App.3d 505, 625 N.E.2d 626. An abuse of discretion connotes more than an error of law or judgment; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Tracy v. Merrell Dow Pharmaceuticals, Inc.* (1991), 58 Ohio St.3d 147, 152, 569 N.E.2d 875, 880–881. In the case at bar, it cannot be said that the trial court abused its discretion.

Evid.R. 403(B) provides:

"Exclusion Discretionary. Although relevant, evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay, *or needless presentation of cumulative evidence.*" (Emphasis added.)

Clearly, the probative value of impeaching the testimony offered by Long with the exhibits in question was outweighed by the prejudicial effect that admitting the lengthy cases into evidence would have on confusing the issues presented. Furthermore, the admission of such exhibits for the purposes of impeaching Long would have been improper under Evid.R. 608(B), as the character of a witness may not be attacked through the use of extrinsic evidence.

Appellees' fourth assignment of error is found to be without merit.

The judgment of the trial court is affirmed in part and reversed in part.

*Judgment accordingly.*

VUKOVICH and WAITE, JJ., concur.