**STAFFILINO CHEVROLET, INC., Appellee,**

v.

**BALK, Appellant.**

[Cite as *Staffilino Chevrolet, Inc. v. Balk,* 158 Ohio App.3d 1, 2004-Ohio-3633.]

Court of Appeals of Ohio,
Seventh District, Belmont County.

No. 03 BE 35.

Decided June 23, 2004.

2

4

**6**

Frank Bruzzese, for appellee.

Christopher Berhalter, for appellant.

VUKOVICH, Judge.

{¶ 1} Defendant-appellant, Lou Balk, appeals from the judgment of the Belmont County Court, Northern Division, which entered judgment in favor of plaintiff-appellee, Staffilino Chevrolet, Inc., in the amount of $15,000 and for Balk on his counterclaim in the amount of $606. Two threshold assignments of error concern the jurisdictional limit of the county court and whether the trial court erred in imposing liability on an employee based upon an implied contract. Multiple other assignments of error contest the evidence to support various parts of the trial court's award of damages. For the following reasons, the trial court's judgment is affirmed in main part and reversed only in so much as it failed to properly credit Balk for the damages awarded to him on his counterclaim.

## STATEMENT OF THE CASE

{¶ 2} On July 17, 2002, Balk discontinued his employment as the body shop manager at Staffilino Chevrolet, Inc. On August 14, 2002, Staffilino filed a small-claims complaint against Balk alleging almost $6,000 in damages but seeking only the small-claims limit of $3,000. Balk counterclaimed for return of various paycheck deductions, $1,680 for extra work performed on Mr. Staffilino's Corvette, one week accumulated vacation time, and a $50 uniform deposit.

{¶ 3} On December 2, 2002, Balk filed a motion to dismiss for failure to state a claim on the grounds that an employer cannot sue an "at will" employee for his actions at work. Staffilino filed a motion to transfer the case to the county court's regular docket and for leave to file an amended complaint to seek more damages. On December 20, 2002, the court denied Balk's motion to dismiss, granted Staffilino leave to amend its complaint, and transferred the case to its regular docket.

{¶ 4} Staffilino's amended complaint alleged that just before quitting, Balk deleted 1,500 repair estimates from the computer system; it calculated that at

least 200 of these estimates were required for future business and that the cost to re-create these files was just over $6,700. Staffilino also claimed that Balk took the appointment calendar and customer list, which damaged it in the amount of $16,247 (which it later explained was total sales and that net profit loss was only $1,242.59). It set forth a nominal claim of $1 because Balk disposed of a computer disk containing a software program. Staffilino then complained that Balk called four insurance companies and directed them to remove Staffilino from their certified list of repair shops, costing it $13,171 in net profit. Staffilino also alleged that Balk's poor service caused it to incur $3,371.82 in extra rental car costs and in corrective repairs, which were not covered by the insurance companies. Staffilino last claimed that under Balk's supervision, it lost $3,334.58 in paint from its inventory. Regardless of the total amount of claimed damages, Staffilino prayed for only $15,000, that being the monetary limit of the county court's jurisdiction. Staffilino also asked for costs and attorney fees. Balk reiterated his counterclaims.

{¶ 5} The case was tried to the court on March 6 and April 14, 2003. On May 16, 2003, the court filed its judgment entry, finding that Balk was entitled to $606 in damages on his counterclaim. The court also concluded that Staffilino was entitled to $27,823.39 in damages, minus $606 for the counterclaim recovery, but reduced to the court's $15,000 jurisdictional limit. Balk filed a timely notice of appeal.

## ASSIGNMENT OF ERROR NUMBER ONE

{¶ 6} Balk sets forth nine assignments of error, the first of which provides:

{¶ 7} "The trial court erred in transferring this matter from small claims division, entertaining a matter for which it had no jurisdiction, and entering a verdict outside of its monetary jurisdiction."

{¶ 8} Pursuant to R.C.1907.03(A), the county court's jurisdiction in a civil case extends to civil actions for the recovery of sums not exceeding $15,000. Appellant sets forth three arguments under this assignment of error as to why the county court's jurisdiction was exceeded. First, he notes that the amended complaint sought $15,000 in damages plus attorney fees. He claims that attorney fees are in the nature of damages rather than costs. Thus, he concludes that the complaint asked for more than the county court's $15,000 limit, which made the case fall outside the county court's jurisdiction and required the court either to dismiss the case or transfer jurisdiction to the common pleas court.

{¶ 9} Staffilino responds that since it abandoned its claim for attorney fees and the trial court did not award attorney fees, the mere request in the complaint is irrelevant as to jurisdiction. In the alternative, Staffilino responds that attorney

8

fees are in the nature of costs rather than damages for purposes of the jurisdictional limit.

{¶ 10} First, we note that contrary to appellant's alternative suggestion mentioned above, the county court cannot transfer the case to the common pleas court where it is *the complaint* that seeks more than the statutory amount. *State ex rel. Natl. Emp. Benefit Serv., Inc. v. Cuyahoga Cty. Court of Common Pleas* (1990), 49 Ohio St.3d 49, 50, 550 N.E.2d 941. If the complaint seeks more than the limit, then dismissal for lack of subject-matter jurisdiction is the remedy. Id. The transfer procedure mentioned by appellant exists only where *the counter-claim* asks for more than the court's monetary limit. Id. The statute detailing the process for transferring a case from the county court to the common pleas court is expressly limited to situations where the counterclaimant seeks more than the county court's jurisdictional limit. R.C. 1907.03(B). Therefore, if appellant is correct (that the damages outlined in the complaint brought the case outside the monetary jurisdiction of the county court), then the only remedy was dismissal for lack of jurisdiction. Id. We thus must determine whether appellant is correct regarding the damages sought in the complaint.

{¶ 11} Initially, we reject Staffilino's argument that the court had jurisdiction because the court did not award more than its monetary limit regardless of how much the complaint sought. If the complaint *seeks* recovery of more than $15,000 in damages, then the county court has no jurisdiction. It is the amount claimed, not the amount recovered, that determines jurisdiction. See *Behrle v. Beam* (1983), 6 Ohio St.3d 41, 43–44, 6 OBR 61, 451 N.E.2d 237. Although *Behrle* applied the statute defining a municipal court's jurisdiction and that statute specifically uses "amount claimed" in its terminology, the concept is the same. R.C. 1907.03(A) limits the county court's monetary jurisdiction "in civil actions *for the recovery* of sums not exceeding fifteen thousand dollars." (Emphasis added.) The plain language of this passage establishes that it is the amount sought to be recovered as set forth in the complaint that determines jurisdiction, not the amount the court decides to award after the case has gone to trial.

{¶ 12} We now turn to Staffilino's alternative argument that its request for $15,000 plus attorney fees did not bring the case outside the county court's jurisdiction because attorney fees are in the nature of costs rather than damages. Balk cites a Twelfth District case, *Fay Gardens Mobile Home Park v. Newman* (1983), 14 Ohio App.3d 144, 14 OBR 160, 470 N.E.2d 164, in support of his opposite conclusion, that attorney fees are in the nature of damages, not costs. In that case, a statute dealing with mobile home parks allowed attorney fees for certain reasons. The court stated that such attorney fees were in the nature of damages rather than costs and thus concluded that the award exceeded the monetary jurisdiction of the trial court.

{¶ 13} We refuse to follow this statement in *Fay* for various reasons. First, that appellate court reduced the award rather than dismissing as would be required where a court lacks subject-matter jurisdiction. Moreover, that court's analysis was dicta because the court had previously found that there was no retaliation, which was required before attorney fees could be awarded under that statute. In fact, the court specifically stated that the question of whether attorney fees were damages or costs was moot. Most important, various Supreme Court holdings, which will be reviewed below, contradict the reasoning of the Twelfth District's *Fay* case. *Christe v. GMS Mgt. Co., Inc.* (2000), 88 Ohio St.3d 376, 726 N.E.2d 497; *Parker v. I & F Insulation Co., Inc.* (2000), 89 Ohio St.3d 261, 264, 730 N.E.2d 972. See, also, *Non-employees of Chateau Estates Resident Assn. v. Chateau Estates Ltd.,* 2d Dist. No. 2002–CA–68, 2003-Ohio-2514, 2003 WL 21121992 (refusing to follow *Fay*).

{¶ 14} For instance, a statute within the Landlord Tenant Act allows the tenant to collect attorney fees for a certain violation by the landlord. The Supreme Court held that these attorney fees are to be taxed as costs rather than awarded as damages. *Christe,* 88 Ohio St.3d at 378, 726 N.E.2d 497. Although the court limited its analysis to that statutory section, the rationale can reasonably be extended to all similar statutes, such as the one at issue in the *Fay* case. See id. and *Parker,* 89 Ohio St.3d at 264, 730 N.E.2d 972 (concluding that attorney fees should be taxed as costs where they are provided for in the Consumer Sales Practices Act).

{¶ 15} In fact, the court noted that it has repeatedly held that when a statute authorizes the award of attorney fees, those fees are to be taxed as costs rather than awarded as damages. *Christe,* 88 Ohio St.3d at 378, 726 N.E.2d 497. Thus, the Supreme Court's holding and reasoning have basically superseded *Fay* and any other prior appellate court cases that have held that a request in a complaint for statutorily permitted attorney fees should be considered in determining the court's monetary limit. See, e.g., *Grossman v. Mathless & Mathless* (1993), 85 Ohio App.3d 525, 620 N.E.2d 160 (10th Dist.); *Tru–Built Garage & Lumber Co., Inc. v. Mays* (Jan. 27, 1993), 2d Dist. No. 13432, 1993 WL 15664.

{¶ 16} This leaves us to determine whether the Supreme Court holding rings true for cases where attorney fees are not awarded pursuant to a statute but are awarded under the bad-faith exception to the American rule of attorney fees. This American rule provides that a prevailing party who does not have the benefit of a contractual right to attorney fees is not entitled to such fees as costs in the absence of a statute or bad faith on the part of the party against whom fees are to be taxed. See, e.g., *State ex rel. Durkin v. Ungaro* (1988), 39 Ohio St.3d 191, 193, 529 N.E.2d 1268.

{¶ 17} Although appellant does not raise it, there is language in a Supreme Court case that could be used to argue that attorney fees awarded under a statute are costs but that those awarded under the bad-faith exception are damages. In that case, the court noted that statutorily permitted attorney fees are costs and that the subject of costs is entirely of statutory allowance. *Sorin v. Warrensville Hts. School Dist. Bd. of Edn.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. The court later mentioned the American rule's bad-faith exception and stated that courts are split as to whether these attorney fees are considered compensatory or punitive damages. Id. at 181, 75 O.O.2d 224, 347 N.E.2d 527. However, the crux of that case was merely to hold that statutory authorization for attorney fees is not provided solely because a statute allows "costs." Id. at 180, 75 O.O.2d 224, 347 N.E.2d 527. Moreover, as the court concluded, the appellant in that case never alleged bad faith, so fees could not be recovered under the bad-faith exception. Id. at 181, 75 O.O.2d 224, 347 N.E.2d 527.

{¶ 18} We conclude that the dicta in *Sorin* does not preclude us from determining that attorney fees sought under the bad-faith exception are costs rather than damages for the purpose of determining whether a complaint seeks recovery within a county court's monetary jurisdiction. This is especially true because the Supreme Court has since pronounced as follows: "Under our common law, attorney fees are in the nature of costs." *Christe*, 88 Ohio St.3d at 378, 726 N.E.2d 497.

{¶ 19} "Costs" is defined as incidental damages allowed to indemnify a party against the expense of successfully asserting his rights in a lawsuit. Id. As the Supreme Court advised, if attorney fees were considered damages, then we would be faced with an issue surrounding the right to have a jury decide the amount of damages instead of the typical case of the court determining the amount of fees. Id.

{¶ 20} The following explanation of the American rule is also helpful: "Generally, a prevailing party may not recover *attorney fees as costs* of litigation in the absence of statutory authority *unless the breaching party has acted in bad faith*, vexatiously, wantonly, obdurately or for oppressive reasons." (Emphasis added.) *Gahanna v. Eastgate Properties, Inc.* (1988), 36 Ohio St.3d 65, 66, 521 N.E.2d 814. This type of Supreme Court language subsequent to *Sorin* supports a conclusion that even attorney fees that are sought for bad faith are to be taxed as costs.

{¶ 21} Finally, we note that the Eleventh District has previously held that attorney fees sought under the bad-faith exception to the American rule are considered part of the costs and thus are not considered in determining the amount of recovery sought for purposes of the municipal court's statutory

monetary limit. *GMS Mgt. Co., Inc. v. Cline* (Aug. 10, 1990), 11th Dist. No. 89–L–14–141, 1990 WL 117109; *GMS Mgt. Co., Inc. v. Ostrow* (Nov. 17, 1989), 11th Dist. No. 88–L–13–138, 1989 WL 140157.

{¶ 22} For all of these reasons, we conclude that a request for attorney fees under the bad-faith exception to the American rule is not to be used to determine whether recovery sought in a complaint exceeds the monetary limit on a county court's jurisdiction. Therefore, Balk's first argument under this assignment of error is overruled.

{¶ 23} Balk's second argument under this assignment of error is that the court acted outside its jurisdiction in the method of awarding him damages in the counterclaim. Specifically, the court found that Staffilino was entitled to $27,823.39; the court then subtracted $606 for Balk's counterclaim from this amount. Finally, the court lowered this figure to the jurisdictional amount of $15,000. Balk contends that the court should have reduced Staffilino's $15,000 award by the $606 award against it, rather than taking the $606 from the true amount of damages. We agree that this part of Balk's argument has merit.

{¶ 24} A party can sue in county court even if his damages are actually more than $15,000, as long as his claim for relief asks for only $15,000. As mentioned, the county court does not have jurisdiction over claims for recovery exceeding $15,000. If the trial court was permitted to calculate damages as it did in this case, then it would be exceeding its jurisdiction. Technically, Staffilino was awarded $15,606 because it received $15,000 outright, plus it had a valid counterclaim against it essentially erased. If a party wishes to reduce its recovery merely to stay in county court, then it cannot expect to receive credit for the counterclaim based upon actual damages that are over the court's jurisdictional limit. Therefore, this argument is sustained, and Staffilino's final damage award shall be reduced by Balk's $606 successful counterclaim.

{¶ 25} The third argument set forth by Balk under this assignment of error contends that R.C. 1925.10(B) was violated because Staffilino's affidavit in support of its motion to transfer jurisdiction to the county court's regular docket stated that Staffilino had a good defense to all of Balk's claims except one. Balk concludes that the statutory provision requires the affidavit to allege a good defense to all counterclaims before a transfer can be accomplished.

{¶ 26} The relevant statute provides as follows:

{¶ 27} "1925.10 Grounds for transfer to regular docket

{¶ 28} "(A) A civil action that is duly entered on the docket of the small claims division shall be transferred to the regular docket of the court upon the motion of

the court made at any stage of the civil action or by the filing of a counterclaim or cross-claim for more than three thousand dollars.

{¶ 29} "(B) In the discretion of the court, a case duly entered on the docket of the small claims division may be transferred to the regular docket of the court upon the motion of a party against whom a claim, counterclaim, or cross-claim is instituted or upon the motion of a third-party defendant. A motion filed under this division shall be accompanied by an affidavit stating that a good defense to the claim exists, setting forth the grounds of the defense, and setting forth the compliance of the party or third-party defendant with any terms fixed by the court. The failure to file a motion under this division to transfer a case to the regular docket of the court constitutes a waiver by the party or third-party defendant of any right to a trial by jury."

{¶ 30} Staffilino filed a motion to transfer the case to the regular docket. It attached an affidavit stating that good defenses to the various counterclaims exist. As grounds for its defense, it stated that it can document the propriety of any sums deducted from Balk's paycheck and the payment of all wages due to Balk.

{¶ 31} Initially, we note that appellant's brief does not specify upon which counterclaim the motion to transfer fails to set forth a good defense. It appears that Balk is referring to his counterclaim for a $50 uniform deposit. With regard to this topic, the affidavit states that this $50 is a setoff against what Balk owes appellee, and, thus, the affidavit essentially admits that Balk was entitled to a refund of his deposit, albeit only in the form of credit.

{¶ 32} As to the substance of Balk's argument, we first note that R.C. 1925.10(B) contains no requirement that the movant must state a good defense to every single claim set forth by the counterclaimant.

{¶ 33} Regardless, the trial court granted Staffilino leave to file an amended complaint, wherein it increased its claim to relief from $3,000 to $15,000. This complaint brought the case out of small claims and onto the regular docket notwithstanding any affidavit under R.C.1925.10(B). Hence, this argument is overruled.

{¶ 34} Balk's first assignment of error is sustained only as to his argument that his $606 counterclaim should be deducted from the $15,000 award rather than from some larger amount of actual damage which was not sought in the complaint. The remaining arguments under this assignment of error were disposed of and are overruled.

## ASSIGNMENT OF ERROR NUMBER TWO

{¶ 35} Balk's second assignment of error provides:

{¶ 36} "The trial court erred in finding that an implied contract existed and in imposing liability based upon the same."

{¶ 37} Balk notes that Staffilino concedes that he was an "at will" employee, not subject to a written employment contract. From this, he concludes that he owed no duties that could be actionable for breach. He claims that because Ohio does not recognize a cause of action for breach of the covenant of good faith for the benefit of an at-will employee in wrongful-discharge cases, such a covenant must thus not exist for the detriment of an at-will employee in general. He notes that employees are not the insurer of their performance, although he admits that they must exercise reasonable care. He also concedes that theft by an employee is actionable, but he opines that that is not the case here.

{¶ 38} Staffilino responds that a written contract is not required for the employer to have the right to sue for sabotage. Staffilino argues that the existence of an at-will employment relationship does not negate the existence of an implied contract concerning various conditions *during* the employment relationship. Staffilino urges that a contract exists in every employment relationship, in that some contract is implied until the at-will employee quits or is terminated. Appellee argues there is an implied contract to act in the best interests of one's employer with good faith and loyalty, to exercise reasonable care, to protect the employer's property, and to refrain from theft and sabotage. It also notes an indemnity right of the employer against the employee after the employer is liable to a third party for the acts of that employee.

{¶ 39} It is true that there is no cause of action for breach of the covenant of good faith and fair dealing by an at-will employee where he is suing for wrongful discharge. *Kuhn v. St. John & W. Shore Hosp.* (1989), 50 Ohio App.3d 23, 25, 552 N.E.2d 240. This is because "at will" means that the employee can be terminated for cause or no cause at all; an at-will employee can be terminated for an unfair reason and thus, generally, there can be no wrongful discharge of an at-will employee. Id. at 24–25, 552 N.E.2d 240. However, merely because an employee is "at will" for purposes of termination or quitting does not mean that an implied contract, or even an express one, does not exist to govern the relationship *prior to such termination.*

{¶ 40} There are three types of contracts: express, implied in fact, and implied in law. *Legros v. Tarr* (1989), 44 Ohio St.3d 1, 6–7, 540 N.E.2d 257. An implied-in-law contract is a legal fiction also called quasi-contract because it is not characterized by a meeting of the minds but rather is based upon unjust enrichment. Id. An implied-in-fact contract is characterized by a meeting of the minds like an express contract; however, the implied-in-fact contract is established through an evaluation of the surrounding facts and circumstances rather

than written or spoken words. Id. A contract is implied in fact if those surrounding facts and circumstances make it inferable that a contract exists as a matter of tacit understanding. Id. See, also, *State ex rel. R.T.G., Inc. v. State*, 98 Ohio St.3d 1, 2002-Ohio-6716, 780 N.E.2d 998, at ¶ 31 (noting that the court is to construe the facts and circumstances to determine the terms of the agreement).

{¶ 41} An implied contract is often imposed where the facts and circumstances allow inference of an agreement in order to explain a certain relationship. *Gebhart v. United States* (1961), 172 Ohio St. 200, 15 O.O.2d 360, 174 N.E.2d 615. Various inferences can be drawn from an employment relationship in order to make the relationship have meaning. It has been stated that implied-in-fact contracts require crucial factual determinations regarding intent and the thought processes of the parties, and, thus, deference must be paid by the reviewing court to the trial court's conclusions. *B & J Jacobs Co. v. Ohio Air, Inc.*, 1st Dist. No. 020264, 2003-Ohio-4835, 2003 WL 22103385; *Day v. Nozik* (Sept. 22, 1995), 11th Dist. No. 94–L–175.

{¶ 42} This court has held that it is an implied condition of employment that an employee will exercise reasonable care and diligence in performing tasks. *W. Coast Indus. Relations Assn., Inc. v. Superior Beverage Group, Ltd.* (1998), 127 Ohio App.3d 233, 238, 712 N.E.2d 770. Even earlier, this court decided an often-cited case where we held that the failure to act in the employer's best interests constitutes a breach of the employment contract. *Am. Ins. Group v. McCowin* (1966), 7 Ohio App.2d 62, 65, 36 O.O.2d 153, 218 N.E.2d 746 (noting that the conditions of employment can arise expressly or impliedly).

{¶ 43} It has also been stated that it is an implied condition of employment that an employee will carry out his duties in good faith and not act to the detriment of his employer. *Rhealy Travel, Inc. v. Sullivan* (Apr. 2, 1998), 8th Dist. No. 73115, 1998 WL 158847 (where the employee converted file boxes). See, also, *Cartwright v. Falls Heating & Cooling, Inc.* (June 29, 1994), 9th Dist. No. 16079, 1994 WL 286280; *Roberto v. Brown Cty. Gen. Hosp.* (1989), 59 Ohio App.3d 84, 86, 571 N.E.2d 467 (12th Dist.).

{¶ 44} In fact, it is said to be well-established law across the country that an agent or employee is prohibited from acting in a manner inconsistent with his agency or employment and is bound to exercise the utmost good faith and loyalty in performance of his obligations. *Hey v. Cummer* (1950), 89 Ohio App. 104, 141, 97 N.E.2d 702 (8th Dist.). Multiple Ohio courts have agreed that an employee owes his employer this duty to act in the utmost good faith and loyalty. *Parry Co. v. Carter* (May 1, 2002), 4th Dist. No. 01CA2617, 2002-Ohio-2197, 2002 WL 988610, at ¶ 38; *Berge v. Columbus Community Cable Access* (1999), 136 Ohio App.3d 281, 286, 736 N.E.2d 517 (10th Dist.). Further, the employer may sue the

employee for breaching this duty of good faith and loyalty. *Sayyah v. O'Farrell* (Apr. 30, 2001), 12th Dist. No. CA2000–06–017, 2001 WL 433789, citing *Berge.*

{¶ 45} For instance, an employee breaches his duty to act with good faith and loyalty where the employee competes with his present employer. *Goal Sys. Internatl. v. Klouda* (Oct. 10, 1985), 10th Dist. No. 84AP–168, 1985 WL 10461. Another example of a breach is where an employee gives away company property, uses company funds as his own, and takes kickbacks. *Parry Co.*

{¶ 46} Additionally, an employee impliedly agrees to indemnify his employer against loss. *Firemen's Ins. Co. of Newark, New Jersey v. Antol* (1984), 14 Ohio App.3d 428, 429, 14 OBR 547, 471 N.E.2d 831 (where the Tenth District dealt with a case of embezzlement). Along the indemnification line of thought, Staffilino correctly argues that an employer can be reimbursed for any money paid to a third party due to an employee's negligence under the doctrine of respondeat superior liability. *Losito v. Kruse* (1940), 136 Ohio St. 183, 188, 16 O.O. 185, 24 N.E.2d 705. See, also, *Shaver v. Shirks Motor Exp. Corp.* (1955), 163 Ohio St. 484, 494, 56 O.O. 404, 127 N.E.2d 355 (noting that the agent is primarily liable).

{¶ 47} It is also obvious that an employer can recover for converted money or property. See *Firemen's,* supra. Conversion is any wrongful exercise of dominion or control exerted over personalty of another in exclusion of the rights of the owner or withholding it from his possession under a claim inconsistent with his rights. *State ex rel. Toma v. Corrigan* (2001), 92 Ohio St.3d 589, 592, 752 N.E.2d 281.

{¶ 48} In a case with some similar facts, the Tenth District found that the employee converted the employer's property where the employee erased computer disks and took computer and personal files. *Norton v. Popper* (June 19, 1990), 10th Dist. No. 89AP–906, 1990 WL 83985 (also dealing with a cause of action of interference with current and potential business relations). See, also, *Iron City Sash & Door Co. v. Mohl* (May 5, 1988), 7th Dist. Nos. 86CA5 and 87CA46, 1988 WL 45451 (where we reviewed a case of conversion and implied contract between and employer and employee after the employee dishonestly took proceeds from the sale of the employer's goods); *Ayers–Sterrett, Inc. v. Cilli* (Feb. 22, 2002), 3d Dist. No. 15–01–09, 2002 WL 255123 (where the employer alleged that some equipment was missing and that an account was unpaid after the employee was terminated). In another case, a court found conversion of a proprietary interest in information and allowed recovery for the time and expense of making recordings that were destroyed. *Schafer v. RMS Realty* (2000), 138 Ohio App.3d 244, 285, 741 N.E.2d 155 (2d Dist.).

{¶ 49} Under all of the foregoing case law, it is apparent that the trial court could properly find an implied contract containing a covenant of good faith and loyalty in this employment relationship. Moreover, contrary to appellant's argument, the complaint also sufficiently set forth alternate claims of conversion and indemnification for respondeat superior liability payments. This assignment of error is overruled in general. The remaining assignments of error relate more specifically to the trial court's decision with regards to each portion of the damage award. Thus, we reserve mention of each individual count for later.

{¶ 50} Before addressing Balk's next argument, we note an argument initially set forth by Staffilino. That is, it contends with regard to assignments of error numbers two through nine that Balk waived his arguments because he failed to object. However, Balk is not contesting the admissibility of any of the evidence. Rather, he is contesting the weight and value of the evidence presented at trial in support of Staffilino's arguments. Thus, Staffilino's argument is misdirected.

## ASSIGNMENT OF ERROR NUMBER THREE

{¶ 51} Appellant's third assignment of error alleges:

{¶ 52} "The trial court's decision awarding appellee $6,703.20 for deleted estimates constituted an abuse of discretion, was against the manifest weight of the evidence, and there lacked sufficient evidence to support the court's decision."

{¶ 53} Before getting to the substance of this assignment, we review the law that is relevant to most of the remaining assignments of error. A judgment will not be overturned as against the weight of the evidence in a civil case if it is supported by some competent, credible evidence going to all the material elements of the case. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 280, 8 O.O.3d 261, 376 N.E.2d 578. If the evidence can reasonably be given more than one interpretation, this court follows the interpretation that is consistent with the judgment of the trial court. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 10 OBR 408, 461 N.E.2d 1273. The trial court occupies the best position from which to evaluate witnesses' voice inflections, gestures, and demeanor. Id. As mentioned, deference is to be paid to the trial court's determination on the parties' intent regarding the implied conditions of employment. *B&J Jacobs Co. v. Ohio Air, Inc.*, 1st Dist. No. C–020264, 2003-Ohio-4835, 2003 WL 22103385; *Day v. Nozik* (Sept. 22, 1995), 11th Dist. No. 94–L–175.

{¶ 54} With regard to this assignment, Staffilino alleged that in the days prior to quitting, Mr. Balk deleted at least 1,500 customer files from Staffilino's CCC Pathways computer, which contained referrals from insurance companies

and estimates made after the cases were referred. In order to perform this act, each customer's name had to be individually highlighted and deleted. Balk admitted that he deleted approximately 600 files. When he quit, only 29 names were left in the system. When asked the reason for the deletions, appellant first claimed that he made the deletions over the course of his employment, as most were older files that were no longer necessary to business. He then stated that he did it because the prior body shop manager also did it and that Mr. Staffilino told him that the customer names were his own work product. He later stated that he deleted them because he did not want his name on Staffilino's estimates.

{¶ 55} Balk claimed that Staffilino had a paper copy of the files. Testimony established, however, that these hard copies were indexed by VIN number and thus discovery of the proper file was difficult and time-consuming. Balk also claimed that the files existed in another computer system, known as ADP. However, he admitted that he never used this computer system, and other testimony established that ADP did not contain the same information as Pathways.

{¶ 56} Although Staffilino alleged that at least 1,500 files were deleted, it sought damages for the deletion of only 200 files, which would represent future business. In order to calculate its damages from the deletion, appellee performed a time study on the cost of reconstruction of the files. It reconstructed ten estimates, which had an average reconstruction time of 1.8 hours at the $18.62 hourly rate of the new body shop manager to get $6,703.20 in damages. Balk complains that the court should not have calculated damages at 1.8 hours because the new body shop manager testified that she thought the average reconstruction time was 45 minutes or one hour. However, Staffilino later testified to exhibits documenting that the average time was 1.8 hours.

{¶ 57} Balk asks why Staffilino would need to reconstruct the computer files. Mr. Staffilino testified that the files constituted the customer list for the body shop. He stated that such proprietary information could have been used for promotional mailings. He also noted that many parts contained warranties and that the files were relevant to find the work performed for past customers. Balk countered that if a prior customer came in with a repair problem, then Staffilino would have the car with the VIN number and thus Staffilino could find the hard copies from the storage room.

{¶ 58} The trial court's decision awarding Staffilino $6,703.20 for deletion of all but 29 files from the CCC Pathways computer was not against the weight of the evidence. As the trial court queried from the bench, if Balk thought that the information was his to take, then why did he delete it rather than taking it with him? Also as the trial court asked, why would he care if his name was on a mere estimate when that was what he was hired to do, make estimates?

{¶ 59} The trial court found from the totality of the circumstances that Balk intentionally caused or attempted to cause financial and organizational chaos and disruption to Staffilino's business. From all of the evidence presented, it is not unreasonable to determine that Balk's actions as a whole represented an attempt at what Staffilino terms "sabotage."

{¶ 60} Even if deletion of older files could be considered a reasonable act by Balk, a court could reasonably find that deletion of more recent files was not reasonable or diligent. Not only could the deletion be considered a breach of an implied condition of employment, but it could also be considered conversion. Contrary to Balk's reasoning, a victim of conversion need not prove that he needs the items converted in order to recover. Finally, the trial court could also choose to believe Mr. Staffilino's testimony on the average time needed to reconstruct a file in order to arrive at a reasonable replacement value. Accordingly, this assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER FIVE

{¶ 61} We have chosen to address Balk's fifth assignment of error next. This assignment provides:

{¶ 62} "The trial court's decision awarding appellee $13,171.00 for loss of profits constituted an abuse of discretion, was against the manifest weight of the evidence, and there lacked sufficient evidence to support the court's decision."

{¶ 63} Testimony established that Staffilino was off the insurance companies' certified list for 106 days. Thus, it received no referrals during this time and lost its main source of customers. Before Balk quit, a witness heard him call State Farm to inform it that Staffilino should be taken off the certified list. The trial court awarded $13,171 in lost profits after finding that Balk intentionally deprived Staffilino of its status on the certified shop list and the opportunity to serve on a guarded or supervised plan.

{¶ 64} Balk explains that a shop must have a certified estimator in order to be on the list for referrals. He reasons that since he had a right to quit, he cannot be held liable for merely telling the insurance companies the truth. If the evidence concerning preclusion from the supervised list is believed, then Staffilino correctly proposes that Balk breached his duty of loyalty as a result of any phone calls made *prior* to quitting. Staffilino provided testimony that if it had the chance to call the insurance companies prior to Balk making his calls, then it would have had an opportunity to be placed on a supervised plan rather than being removed from the list completely. Appellee alleges that once Balk caused it to be removed, it could no longer ask to be placed in the supervised, interim

program. Staffilino alleged that this also constituted interference with a business relationship.

{¶ 65} Balk claims that Staffilino failed to mitigate its damages because some testimony implied that it did not try hard enough to get on the supervised plan. Although the testimony concerning the supervised list was contradictory and some readers of the transcript may conclude that the claims of being precluded from the supervised list lack credibility, it is not this court's place to second-guess the trial court's live credibility determinations. The evidence is susceptible of more than one reasonable interpretation; hence, the trial court's decision is entitled to be upheld.

{¶ 66} As for the specific amount of damages, we start with how Staffilino arrived at the amount of damages. As mentioned, appellee calculated that the lack of insurance-company-referred business cost it a net loss of $13,171. Appellee arrived at this figure by starting with $422,429.22 in annual sales from insurance company referrals only. It divided this figure by the 260 days that it was on the list for the year, and came up with $1,624.72 per day in total sales. Appellee multiplied this daily total sales figure by the 106 days it was off the certified list to get $172,220.32. It then reduced this figure to $65,856 by taking approximately 38.24 percent for gross profit. It further reduced this figure by 80 percent for expenses to arrive at $13,171 for net profit lost during the time spent off of the certified list.

{¶ 67} The trial court could properly use its decisionmaking powers to accept these figures as accurate and reasonably interpret the testimony to establish entitlement to $13,171 in lost profits for usurping Staffilino's opportunity to obtain supervised but still-certified status. Therefore, this assignment of error is overruled.

## ASSIGNMENTS OF ERROR NUMBERS FOUR, SIX, AND SEVEN

{¶ 68} Balk's fourth, sixth, and seventh assignments of error provide:

{¶ 69} "The trial court's decision awarding appellee $1,242.59 for an appointment calendar constituted an abuse of discretion, was against the manifest weight of the evidence, and there lacked sufficient evidence to support the court's decision."

{¶ 70} "The trial court decision finding appellant responsible for repairs and automobile rental bills constituted an abuse of discretion, was against the manifest weight of the evidence, and there lacked sufficient evidence to support the court's decision."

{¶ 71} "The trial court's decision awarding appellee $3,334.58 for paint constituted an abuse of discretion, was against the manifest weight of the evidence, and there lacked sufficient evidence to support the court's decision."

{¶ 72} These assignments of error need not be addressed because this court has already confirmed at least $15,000 worth of damages, that amount being the monetary limit of the trial court. We thus turn to the remaining two assignments.

## ASSIGNMENT OF ERROR NUMBER EIGHT

{¶ 73} Appellant's eighth assignment of error contends:

{¶ 74} "The trial court erred in failing to grant the appellant's request for a directed verdict."

{¶ 75} Appellant moved for directed verdict at the close of Staffilino's case. However, a motion for directed verdict is not the proper vehicle in a nonjury civil action. Rather, the proper means to seek dismissal after presentation of the plaintiff's case in a civil bench trial is under Civ.R. 41(B)(2), which provides:

{¶ 76} "Dismissal; non-jury action. After the plaintiff, in an action tried by the court without a jury, has completed the presentation of the plaintiff's evidence, the defendant, without waiving the right to offer evidence in the event the motion is not granted, may move for a dismissal on the ground that upon the facts and the law the plaintiff has shown no right to relief. The court as trier of the facts may then determine them and render judgment against the plaintiff or may decline to render any judgment until the close of all the evidence."

{¶ 77} Nonetheless, courts often construe a motion for directed verdict in a civil bench trial as a Civ.R. 41(B)(2) motion for dismissal. See, e.g., *Ohio Edison Co. v. Hwy. Carrier Co.* (Jan. 21, 1994), 2d Dist. No. 3047, 1994 WL 12468. Even in doing so, the trial court could properly deny the motion in this case. Any further analysis with regard to this topic is consumed by the results of assignments of error numbers two through seven above. This assignment of error is overruled.

## ASSIGNMENT OF ERROR NUMBER NINE

{¶ 78} Appellant's ninth and final assignment of error provides:

{¶ 79} "The trial court's decision to only award the appellant $400 for additional work performed constituted an abuse of discretion, was against the manifest weight of the evidence, and not based upon the sufficiency of the evidence."

{¶ 80} Balk's counterclaim sought $1,680 for work he performed on Mr. Staffilino's Corvette. Balk testified that Staffilino agreed to pay him $20 per hour and that he worked 84 hours on the vehicle. Testimony established that much of this work was performed during regular work hours and much of it was performed by two body shop technicians who testified for Balk. The court took one of the technician's estimates of 8 to 12 hours worked outside regular work hours, rounded it up to 12 hours, and added 8 hours for time when this technician may not have been present for a total of 20 hours Balk spent working on the Corvette during nonwork hours. The trial court's award to Balk was not insufficient under one of the available reasonable interpretations of the facts presented. Hence, this assignment of error is overruled.

{¶ 81} For the foregoing reasons, the trial court's $15,000 judgment in favor of Staffilino is affirmed, the $400 judgment in favor of Balk on his counterclaim for the Corvette work is affirmed, but the court's failure to reduce the $15,000 judgment by the total amount awarded to Balk, that is $606, is reversed. A reduced judgment is entered in favor of Staffilino for $14,394.

Judgment accordingly.

WAITE, P.J., and GENE DONOFRIO, J., concur.