[Cite as *State v. Johnson*, 2023-Ohio-4531.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                   :

    Plaintiff-Appellee,                    :

                                   Nos. 112387 and 112462

    v.                                              :

MARVIN JOHNSON, JR.,                        :

    Defendant-Appellant.               :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 14, 2023

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case Nos. CR-20-650605-A and CR-21-656151-A

---

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Brad S. Meyer, Assistant Prosecuting
Attorney, *for appellee.*

The Goldberg Law Firm and Adam Parker, *for appellant.*

MARY EILEEN KILBANE, J.:

**{¶ 1}** In this consolidated appeal, defendant-appellant Marvin Johnson, Jr. ("Johnson") appeals from his convictions for aggravated robbery and other offenses. For the reasons that follow, we affirm.

**Factual and Procedural History**

{¶ 2} This delayed appeal stems from two separate criminal cases and multiple trials. In Cuyahoga C.P. No. CR-20-650605-A, on June 9, 2020, a Cuyahoga County Grand Jury indicted Johnson on two counts of grand theft in violation of R.C. 2913.02(A)(1), 12 counts of aggravated robbery in violation of R.C. 2911.01(A)(1), six counts of having weapons while under disability in violation of R.C. 2923.13(A)(2), four counts of theft in violation of R.C. 2913.02(A)(1), two counts of breaking and entering in violation of R.C. 2911.13(A), one count of felonious assault in violation of R.C. 2903.11(A)(1), two counts of felonious assault in violation of R.C. 2903.11(A)(2), one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3), and one count of receiving stolen property in violation of R.C. 2913.51(A). Many of the counts also carried a variety of firearm and other specifications.

{¶ 3} In Cuyahoga C.P. No-CR-21-656151-A, on January 21, 2021, a Cuyahoga County Grand Jury indicted Johnson on three counts of aggravated robbery in violation of R.C. 2911.01(A)(1), two counts of having weapons while under disability in violation of R.C. 2923.13(A)(2), one count of felonious assault in violation of R.C. 2903.11(A)(2), and one count of discharge of a firearm on or near prohibited premises in violation of R.C. 2923.162(A)(3). Each count had multiple firearm specifications, notice of prior conviction specifications, and repeat violent offender specifications.

{¶ 4} On September 16, 2021, the trial court granted a motion to sever in part, resulting in multiple trials of specific counts from the aforementioned indictments as described below.

**Case 656151 – T-Mobile**

{¶ 5} In Cuyahoga C.P. No-CR-21-656151-A, the court granted Johnson's motion to sever Count 1, aggravated robbery, and Count 2, having weapons while under disability, from the remaining counts. Johnson waived his right to a jury trial as to Count 2, the notice of prior conviction specification, the repeat violent offender specification, and the 18-month and 54-month firearm specifications on Count 1. On November 3, 2021, the case proceeded to a jury trial on Count 1, aggravated robbery, and the attendant one- and three-year firearm specifications. The following information was elicited at trial.

{¶ 6} On December 7, 2019, a suspect robbed a T-Mobile store at Shaker Square in Cleveland, Ohio at gunpoint. The assistant store manager at the time, Ronnie Ransom ("Ransom") testified that a masked man carrying a gun entered the store, approached Ransom and Sharonda Smith ("Smith"),[1] the other employee on duty at the time, and ordered them to give him cash and phones. Ransom testified that they complied with his demands and when Ransom put iPhones into the suspect's bag as ordered, he also put a dummy phone into the bag. Ransom explained that all T-Mobile stores were equipped with a tracking device that was

---

[1] Smith also testified at trial via Zoom. Her version of events mirrored Ransom's testimony.

packaged and concealed in an iPhone box for loss prevention purposes. When the tracking device left the store, the device automatically "pinged" the third-party security company, which then followed up with the store. Ransom testified that when someone from the company called the store, they communicated directly with the police and worked to locate the tracking device.

{¶ 7} Ransom also testified that immediately after the suspect left the store, as Ransom went to lock the front door of the store, an individual approached him and provided Ransom with a partial license plate number from the suspect's vehicle. Ransom testified that he saw the suspect drive away in a dark car.

{¶ 8} Laurence Szapor ("Szapor") testified that he works for 3SI Security, a company that provides GPS trackers included in items, such as dummy phones, to assist businesses when property is stolen from certain locations. Szapor testified that when T-Mobile's tracking device left the store, it alerted 3SI and 3SI was able to track the device's location in real time using a web-based Google map. Szapor testified that this information was shared with Cleveland police. Szapor testified that the tracking device was first located at 10502 Shaker Boulevard, was there for approximately six minutes, and was subsequently tracked to the 3200 block of East 118th Street in Cleveland, Ohio.

{¶ 9} Detective Rayshon Blue ("Blue") testified that in December 2019, he was working as a patrol officer for the Cleveland Division of Police. Blue testified that he responded to the T-Mobile store following a radio call that the store was robbed at gunpoint. Upon arriving at the store, Blue spoke with Ransom, who

summarized the events above. Shortly thereafter, the store manager arrived at the store to provide law enforcement with the store's security footage. The security footage showed the suspect wearing a black Puma Ferrari track suit.

{¶ 10} Blue testified that there was no physical evidence to collect from inside the store, because security footage confirmed that the suspect did not touch anything inside the store. Throughout the robbery, the suspect held a gun in one hand, wore a glove on the other hand, and directed the store employees to empty the drawers and safes into his bag so that he did not touch them.

{¶ 11} Blue testified that the partial plate number provided from an unknown individual turned out to be incorrect but by using T-Mobile's tracking device, police were ultimately able to locate the suspect's vehicle.

{¶ 12} Detective Devan Wynn ("Wynn") testified that he was also working as a patrol officer for the Cleveland Division of Police in December 2019. Wynn testified that he was tasked with locating the suspect's car based on tracking information. Wynn went to an apartment complex at 10502 Shaker Boulevard looking for a black Chrysler Sebring. Wynn testified that he located the vehicle in the building's rear parking lot and it had a temporary license plate that was one number off from the information that was provided at the scene from an unknown individual. Wynn provided this information to police dispatch and learned that the license plate came back to another vehicle — a Nissan Altima — meaning that the Sebring was stolen. Wynn testified that he did not touch the vehicle or search the inside of the vehicle and it was ultimately towed to the police processing lot.

{¶ 13} Detective Walter Emerick ("Emerick") testified that he was a detective with the Cleveland Division of Police and was assigned to process the Chrysler Sebring in connection with this case. Emerick testified that as part of this process, he collected DNA swabs from the vehicle's steering wheel and gearshift.

{¶ 14} Detective Christopher Musson ("Musson") testified that he was a detective with the Cleveland Division of Police and in December 2019, he was working as a patrol officer. Musson testified that he was dispatched to East 118th Street after it was determined that this was the last known location of the tracking device. Musson testified that he responded first to 3226 East 118th Street, which appeared to be a vacant house. Musson testified that several other officers were on the scene, and he went down the driveway of a neighboring house to get a better view of the rear of the houses. Musson testified that he located the tracking device in the driveway of 3230 East 118th Street. Detective Michael Hale ("Hale") testified that he was employed as a detective with the Cleveland Division of Police in the crime scene unit. Hale testified that he responded to 3230 East 118th Street and collected the tracking device into evidence.

{¶ 15} Detective Shane Bauhof ("Bauhof") testified that he was a detective with the Cleveland Division of Police and in December 2019, he was employed in the major crimes unit. Bauhof testified that he was tasked with executing a search warrant in connection with this case. On January 7, 2020, Bauhof executed a search warrant at 10502 Shaker Boulevard, Apartment 89, which was associated with Johnson. Bauhof explained that he was looking for several things, including a red

Puma Ferrari jacket, a black hoodie, and black Nike high-top sneakers. Bauhof testified that he located a black Puma Ferrari jacket that matched the one worn by the suspect in the security footage, as well as black Nike high-top sneakers and a firearm.

{¶ 16} Detective Lisette Gonzalez ("Gonzalez") testified that she was a detective with the Cleveland Division of Police and in December 2019, she was employed in the major crimes unit. Gonzalez testified that after another detective searched the contents of the Chrysler Sebring used in connection with the robbery in this case, Gonzalez received receipts from the car. Gonzalez testified that she was given a Walgreens receipt and a Home Depot receipt. Based on those receipts, Gonzalez went to a Walgreens store on Shaker Boulevard and ultimately learned that Courtney Reed ("Reed") had picked up a prescription from that store from the drive-through pharmacy window in a black Chrysler Sebring. Gonzalez also visited the Home Depot store in Steelyard Commons and obtained a still photograph from security footage showing Reed and Johnson. Gonzalez subsequently looked up Reed and determined that Reed's relative, Isaac Hill, had a Nissan Altima registered in his name. Gonzalez noted this because the license plate on the Sebring was attached to a Nissan Altima. Gonzalez also learned that Reed lived at 10502 Shaker Boulevard. Gonzalez learned that Johnson was associated with 3230 East 118th Street; this address was on an identification card of Johnson's found while executing a search warrant in connection with this case. Through this investigation, Gonzalez learned that Reed and Johnson were in a romantic relationship. Gonzalez was also able to

obtain photos of Johnson from social media showing Johnson wearing the black and red Puma Ferrari jacket.

{¶ 17} Gonzalez also testified that as part of the investigation, she obtained a search warrant for buccal swabs from Johnson to compare to the DNA samples taken from the Chrysler Sebring. Gonzalez identified Johnson at trial.

{¶ 18} Detective Tim Cramer ("Cramer") testified that he was employed with the Cleveland Division of Police and in December 2019, he was a detective in the major crimes unit. Cramer testified that he was assigned to this case in December 2019. Cramer testified that he began responding to a call of an aggravated robbery at Shaker Square, changed direction en route to follow the tracking device to the Shaker Boulevard apartment complex, and then changed direction again to ultimately respond to East 118th Street.

{¶ 19} Cramer testified that as a result of the investigation described above, police arrested Johnson in January 2020. Following Johnson's arrest, police obtained a search warrant for his phone and ultimately obtained location data placing him at Walgreen's in corroboration of the security footage and Reed's receipt.

{¶ 20} Christine Scott ("Scott") testified that she was employed at the Cuyahoga County Regional Forensic Science Laboratory as a DNA analyst. Scott testified that she analyzed the DNA evidence collected from the Chrysler Sebring and compared it to Johnson's buccal sample and subsequently prepared a report in connection with this case. Scott testified that the evidence contained DNA from two

unknown contributors, one of which was determined to be Johnson. Salesha Frantz ("Frantz") testified that she was also employed as a DNA analyst in the county forensic science laboratory. Frantz testified that she tested DNA collected from the tracking device and box and compared it to Johnson's buccal sample and determined that Johnson had contributed DNA to the evidence collected from the tracking device.

{¶ 21} Johnson made an oral motion for acquittal pursuant to Crim.R. 29. The trial court denied this motion. The defense rested and then renewed its Crim.R. 29 motion, which the trial court again denied.

{¶ 22} On November 9, 2021, the jury found Johnson guilty of aggravated robbery and the one- and three-year firearm specifications. The court subsequently found Johnson guilty of having weapons while under disability and the remaining specifications tried to the court.

{¶ 23} On November 30, 2021, Johnson filed a motion for a new trial. On December 22, 2021, the state filed objections to Johnson's motion. On January 6, 2022, the court held a hearing on the motion. The court held its ruling on the motion in abeyance and continued the case to allow time for a transcript to be prepared.

{¶ 24} The court reconvened on March 30, 2022, and the parties again made arguments as to Johnson's motion for a new trial. On April 6, 2022, the court denied Johnson's motion for a new trial. On March 3, 2023, after the remaining counts and cases had been resolved as described below, Johnson filed a notice of appeal and a motion for delayed appeal.

**Case 650605 – Boost Mobile**

{¶ 25} On May 6, 2022, Cuyahoga C.P. No. CR-20-650605-A was set for a bench trial on Count 4, aggravated robbery; Count 5, theft; and Count 6, having weapons while under disability. Prior to trial, the state amended Count 4 from aggravated robbery to robbery, a felony of the second degree, in violation of R.C. 2911.02(A)(2), and deleted the one-year, three-year, and 54-month firearm specifications.[2] The state also dismissed Count 6, having weapons while under disability.

{¶ 26} Prior to trial, defense counsel stipulated to a DNA report previously testified to by Scott, stating that Johnson's DNA was found in the Chrysler Sebring.

{¶ 27} The following information was elicited at trial.

{¶ 28} On the evening of November 13, 2019, a suspect walked into a Boost Mobile store in Cleveland, Ohio, carrying a long rifle. Nishayla Wilson ("Wilson") testified that she was working as a cashier at Boost Mobile when a man came into the store, pointed a gun at her, and ordered her to empty the cash register and give him cash and iPhones. Wilson testified that she did as the suspect instructed. The suspect was wearing a Puma Ferrari jacket and left the scene in a black Chrysler Sebring. Wilson testified that once the suspect left, Wilson called the police and her manager.

---

[2] Count 4 still carried a notice of prior conviction specification and repeat violent offender specification.

{¶ 29} Risel Maldonado ("Maldonado") testified that he was the district manager of the Boost Mobile store in November 2019 when he received a message from Wilson that the store had been robbed. Maldonado testified that he went to the store and found Wilson, who was shaken up. Maldonado cooperated with police and provided them with the store's surveillance footage. After checking the store's inventory, Maldonado confirmed that six iPhones had been stolen, along with about $500 cash.

{¶ 30} Officer Clayton Ellenberger ("Ellenberger") testified that in November 2019, he was a patrol officer with the Cleveland Division of Police who responded to the Boost Mobile robbery. Ellenberger testified that he spoke with Wilson, who relayed the events described above, and Maldonado, who provided him with surveillance footage.

{¶ 31} The state also called Wynn to testify, much as he did in Cuyahoga C.P. No. CR-21-656151-A, that he responded to the December 2019 T-Mobile robbery and ultimately located a black Chrysler Sebring that contained information connecting the car to Johnson, as well as DNA evidence from Johnson.

{¶ 32} Bauhof testified that he was assigned to the Boost Mobile robbery the following day. Similarly to Wynn, Bauhof testified that following the T-Mobile robbery, he executed a search warrant at a Shaker Boulevard apartment building and found clothing — a Puma Ferrari jacket — that appeared to have been worn by the suspect in both the T-Mobile and Boost Mobile robberies. Finally, Gonzalez

likewise testified as to the nature of her investigation into Johnson following both robberies.

{¶ 33} At the close of the state's case, Johnson made a Crim.R. 29 motion for acquittal; the trial court denied this motion. The defense rested and then renewed its Crim.R. 29 motion, which the trial court again denied.

{¶ 34} On May 9, 2022, the court found Johnson guilty of amended Count 4, robbery, and Count 5, theft. Following the verdict, defense counsel informed the court that it had some concerns about Johnson's competency and requested a psychiatric evaluation to determine whether Johnson was competent.

{¶ 35} On November 30, 2022, following numerous status hearings with respect to Johnson's competency, defense counsel stipulated to an August 19, 2020 psychiatric evaluation finding that Johnson was competent. The state subsequently informed the court that following discussions with defense counsel, the parties had reached a preliminary agreement to a global resolution of the remaining counts and specifications in all cases. The state requested a recess to finalize the terms of this agreement.

**Plea Agreement and Sentence**

{¶ 36} Following a brief recess, the state outlined the terms of the plea agreement[3] as follows: in Cuyahoga C.P. No. CR-21-656151-A, Johnson would plead guilty to one count of aggravated robbery with a three-year firearm specification and

---

[3] The plea agreement involved three other cases: Cuyahoga C.P. No. CR-20-652028-A, Cuyahoga C.P. No. CR-21-665209-D, and Cuyahoga C.P. No. CR-22-674437-A. These three cases are not a subject of this appeal.

one count of felonious assault. In Cuyahoga C.P. No. CR-20-650605-A, Johnson would plead guilty to two counts of theft, four counts of aggravated robbery, two counts of breaking and entering, one count of felonious assault, one count of having weapons while under disability, and one three-year firearm specification. The agreement also included an agreed total prison sentence of 18 years with no judicial release. Finally, the agreement required that Johnson have no contact with any of the named victims in any of the cases. Defense counsel confirmed that this was Johnson's understanding of the plea agreement.

{¶ 37} On December 13, 2022, the court held a change of plea hearing. The court engaged Johnson in a plea colloquy, and Johnson pleaded guilty to the aforementioned offenses and specifications. The court then proceeded directly to sentencing. The assistant prosecuting attorney, defense counsel, and Johnson addressed the court. The court sentenced Johnson to a total aggregate prison term of 18 to 19 and one-half years.

{¶ 38} On February 7, 2023, Johnson filed a motion for delayed appeal and a notice of appeal in Cuyahoga C.P. No. CR-20-650605-A. On March 1, 2023, this court granted Johnson's motion for delayed appeal. In a corresponding journal entry, this court stated that

> [a] review of the record shows that appellant was sentenced in conjunction with several companion cases. Along with the trial court appointing attorney Parker regarding the instant appeal of CR 20-650605, the trial [court] also appointed attorney Parker to the appeal of CR 20-656151. Attorney Parker has not filed an appeal regarding CR 20-656151 and is directed to do so along with filing a motion for a delayed appeal and a motion to consolidate with the instant appeal.

{¶ 39} On March 3, 2023, Johnson filed a notice of appeal, a motion for delayed appeal, and a motion to consolidate the appeals in Cuyahoga C.P. No. CR-21-656151-A. On March 22, 2023, this court granted Johnson's motions for delayed appeal and motion to consolidate the appeals. Johnson now appeals, presenting six assignments of error for our review:

I. The trial court erred in overruling appellant's motion for a new trial.

II. The state's improper comments during closing argument deprived Mr. Johnson of a fair trial.

III. Appellant's trial counsel was ineffective for failing to object to the state's improper comments during closing argument.

IV. Cumulative error deprived appellant of a fair trial.

V. Defendant's convictions are against the sufficiency of the evidence.

VI. Defendant's convictions are against the manifest weight of the evidence.

**Law and Analysis**

**I. Motion for a New Trial**

{¶ 40} In Johnson's first assignment of error, he argues that the trial court erred in denying his motion for a new trial where the jury heard evidence of other crimes that was inadmissible under Evid.R. 404(B). Specifically, Johnson refers to testimony from Gonzalez during the jury trial in Cuyahoga C.P. No. CR-21-656151-A. During the state's direct examination of Gonzalez, the assistant prosecuting attorney showed her a still photograph and asked if she recognized what the photograph depicted. She responded:

It's a picture of Marvin Johnson in a Puma style jacket at the entrance of the store that was attempted to be broken into on East 71st Street.

Defense counsel objected to this response, and the court sustained the objection and struck Gonzalez's statement from the record and instructed the jury to disregard the statement.

{¶ 41} Crim.R. 33 sets forth grounds upon which a new trial may be granted. *State v. McMahan*, 8th Dist. Cuyahoga No. 82753, 2004-Ohio-229, ¶ 7. Crim.R. 33(A)(2) provides that a new trial may be granted on motion of the defendant for "[m]isconduct of the jury, prosecuting attorney, or the witness for the state" that materially affects the defendant's substantial rights. "The decision to grant or deny a motion for a new trial is within the sound discretion of the trial court and, absent an abuse of discretion, that decision will not be disturbed." *McMahan* at ¶ 6, citing *State v. Hawkins*, 66 Ohio St.3d 339, 350, 612 N.E.2d 1227 (1993). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463.

{¶ 42} We decline to find that an isolated comment at issue here substantially violated Johnson's rights. The comment was immediately stricken from the record, and the trial court issued a curative instruction to the jury to disregard the comment. If an error occurs, such as the jury hearing improper testimony, the "'jury is presumed to follow the instructions, including curative instructions, given it by a trial judge.'" *State v. D.H.*, 10th Dist. Franklin No. 16AP-

501, 2018-Ohio-559, ¶ 87, quoting *State v. Garner*, 74 Ohio St.3d 49, 59, 656 N.E.2d 623 (1995). Nothing in the record indicates that the jury did not follow the trial court's instruction to disregard Gonzalez's statement.

{¶ 43} Further, we note that while Gonzalez's statement at least implicitly connected Johnson to another crime — attempting to break into another store — her testimony did not directly state that Johnson attempted to break into the store.

{¶ 44} Viewing the detective's comments in the context of the trial as a whole, we cannot conclude that the comments, which were followed by a curative instruction, substantially affected Johnson's rights so as to require a new trial. Given the nature of the comments and the trial court's curative instruction, the trial court's denial of Johnson's motion for a new trial was not unreasonable, arbitrary, or unconscionable. Therefore, we cannot conclude that the trial court's denial of Johnson's motion for a new trial was an abuse of discretion. Johnson's first assignment of error is overruled.

## II. Closing Arguments

{¶ 45} In Johnson's second assignment of error, he argues that the state's improper comments during closing argument deprived Johnson of a fair trial. Specifically, Johnson takes issue with the assistant prosecuting attorney's statement: "There's nobody else sitting at that table except that individual," referring to Johnson at the defense table. Johnson argues that this statement somehow deprived him of a fair trial by contravening the presumption of innocence. We disagree.

{¶ 46} A prosecutor has considerable latitude during closing argument. *State v. Hunt*, 8th Dist. Cuyahoga No. 111892, 2023-Ohio-1977, ¶ 46, quoting *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, 971 N.E.2d 865, ¶ 149. The test for prosecutorial misconduct in closing argument is """whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the defendant.""" *State v. Lee*, 2016-Ohio-8324, 75 N.E.3d 956, ¶ 36 (8th Dist.), quoting *State v. Hessler*, 90 Ohio St.3d 108, 125, 734 N.E.2d 1237 (2000), quoting *State v. Smith*, 14 Ohio St.3d 13, 14, 470 N.E.2d 883 (1984). It is improper for an attorney to express his personal belief or opinion as to the credibility of a witness or as to the guilt of the accused. *Smith* at ¶ 14. Further, prejudice is shown when there is a reasonable probability that but for the improper remark by the prosecutor, the result of the trial would have been different. *Hunt* at ¶ 46, citing *State v. Stevens*, 3d. Dist. Allen No. 1-14-58, 2016-Ohio-446, 58 N.E.3d 584, ¶ 53.

{¶ 47} We acknowledge that the presumption of innocence in favor of the accused is a basic and fundamental component of a fair trial and "it is our duty to be alert to factors that undermine fairness in the fact-finding process and dilute the right to this presumption. *State v. Montgomery*, 169 Ohio St.3d 84, 2022-Ohio-2211, 202 N.E.3d 616, ¶ 19, citing *State v. Lane*, 60 Ohio St.2d 115, 397 N.E.2d 1338 (1979).

{¶ 48} Viewing the remark in question in the context of the state's closing argument as a whole, it is clear that the remark did not somehow dilute Johnson's right to be presumed innocent. The primary issue throughout the jury trial,

according to Johnson, was the identity of the suspect. During defense counsel's closing argument, counsel alluded to other individuals who may have been connected to the incident. In response, the assistant prosecuting attorney reiterated the evidence that connected Johnson to the incident and attempted to compare this evidence to the evidence against hypothetical other suspects. Further, viewing the remark in question in the context of the entire trial, it is even more clear that the remark was not improper and, but for the remark, the result of the trial would not have been different. Therefore, Johnson's second assignment of error is overruled.

## III. Ineffective Assistance of Counsel

{¶ 49} In Johnson's third assignment of error, he argues that his counsel was ineffective for failing to object to the state's improper comments during closing argument, specifically referring to the comment discussed in our analysis of Johnson's second assignment of error.

{¶ 50} To show ineffective assistance of counsel, a defendant must demonstrate counsel's performance was both below an objective standard of reasonable representation and that he suffered prejudice by counsel's deficient performance. *State v. McGee*, 8th Dist. Cuyahoga Nos. 110980 and 110981, 2022-Ohio-2045, ¶ 32, citing *State v. Drummond*, 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 205, citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Prejudice can be established when a defendant shows "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.'" *Id.*, quoting *Strickland* at 694. "'A

reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* Where a defendant fails to prove either prong of the *Strickland* test, it is unnecessary for a court to consider the other prong. *State v. Madrigal*, 87 Ohio St.3d 378, 388-389, 721 N.E.2d 52 (2000), citing *Strickland* at 697.

{¶ 51} As we have determined in our resolution of Johnson's second assignment of error, the assistant prosecuting attorney's remarks during closing arguments were not improper. Therefore, we cannot conclude that defense counsel's decision not to object to the remarks fell below an objective standard of reasonableness so as to be deficient. Because Johnson cannot satisfy the first prong of the *Strickland* test, he is unable to establish that he received ineffective assistance of counsel. Johnson's third assignment of error is therefore overruled.

## VI. Cumulative Error

{¶ 52} In Johnson's fourth assignment of error, he argues that cumulative error deprived him of a fair trial. Specifically, he argues that even if the mention of impermissible other-acts evidence and the state's allegedly improper comments do not, on their own, amount to reversible error, their cumulative effect deprived him of a fair trial.

{¶ 53} Under the cumulative error doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal. *State v. Castellon*, 8th Dist. Cuyahoga No. 106813, 2019-Ohio-628, ¶ 44, citing *State v. DeMarco*, 31 Ohio St.3d 191, 196-197, 509

N.E.2d 1256 (1987). To find cumulative error, we must first find that there were multiple errors committed at trial, and secondly, we must conclude that a reasonable probability exists that the outcome of the trial would have been different but for the combination of harmless errors. *Id.*, citing *Madrigal*, 87 Ohio St.3d 378, at 398, 721 N.E.2d 52 (2000).

{¶ 54} Here, we have not found that any errors occurred at trial. Therefore, we cannot conclude that cumulative error deprived Johnson of a fair trial. Johnson's fourth assignment of error is overruled.

## V. Sufficiency of the Evidence

{¶ 55} In Johnson's fifth assignment of error, he argues that his convictions were not supported by sufficient evidence. Specifically, Johnson argues that in both cases, the state's case depended on the fact that law enforcement determined that he owned clothing similar to the outfit worn by the suspect in both incidents, despite the fact that several witnesses testified that the clothing was not unique. Johnson also argues that while his DNA was found in a black Chrysler Sebring, the state did not conclusively prove that this was the getaway vehicle used in either incident.

{¶ 56} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state has met its burden of production at trial. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). Whether the evidence is legally sufficient to support a verdict is a question of law. *Thompkins* at 386. We must determine "'whether, after viewing the evidence in a light most

favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. We do not assess whether the state's evidence is to be believed; we assess whether the evidence admitted at trial, if believed, supported the adjudication. *Thompkins* at 390 (Cook, J., concurring).

{¶ 57} In other words, we assume the state's witnesses testified truthfully and determine whether that testimony, along with any other evidence presented, satisfies each element of the offense. *In re D.R.S.*, 8th Dist. Cuyahoga No. 103584, 2016-Ohio-3262, ¶ 23. The elements of an offense may be proven by direct evidence, circumstantial evidence, or both. *See, e.g., State v. Wells*, 8th Dist. Cuyahoga No. 109787, 2021-Ohio-2585, ¶ 25, citing *State v. Durr*, 58 Ohio St.3d 86, 568 N.E.2d 674 (1991). "Direct evidence exists when 'a witness testifies about a matter within the witness's personal knowledge such that the trier of fact is not required to draw an inference from the evidence to the proposition that it is offered to establish.'" *Wells* at ¶ 25, quoting *State v. Cassano*, 8th Dist. Cuyahoga No. 97228, 2012-Ohio-4047, ¶ 13. Circumstantial evidence is "evidence that requires 'the drawing of inferences that are reasonably permitted by the evidence.'" *Wells* at ¶ 25, quoting *Cassano* at ¶ 13; *see also State v. Hartman*, 8th Dist. Cuyahoga No. 90284, 2008-Ohio-3683, ¶ 37 ("[C]ircumstantial evidence is the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts in

accordance with the common experience of mankind."). Circumstantial evidence and direct evidence have "equal evidentiary value." *Wells* at ¶ 26, citing *State v. Santiago*, 8th Dist. Cuyahoga No. 95333, 2011-Ohio-1691, ¶ 12.

{¶ 58} As an initial matter, the question of whether a Puma Ferrari jacket is distinct or not has little to no bearing on the sufficiency of the evidence. Furthermore, Johnson's arguments that the only evidence tying him to the incidents was the clothing found in his apartment and the DNA found in the Chrysler Sebring is not an accurate representation of the evidence presented at trial. At least with respect to the T-Mobile robbery, it ignores perhaps the strongest link between Johnson and the incident: the fact that T-Mobile's tracking device was found in the driveway of Johnson's house. While it is true that there was not an eyewitness at either incident who was able to identify Johnson at trial, due to the fact that the suspect's face was covered during the robberies, there is ample direct and circumstantial evidence to conclude that Johnson was the suspect in both cases. Therefore, Johnson's convictions were supported by sufficient evidence. Johnson's fifth assignment of error is overruled.

## VI. Manifest Weight of the Evidence

{¶ 59} In Johnson's sixth assignment of error, he argues that his convictions were against the manifest weight of the evidence. While Johnson's brief contains the appropriate standard for evaluating whether a conviction is against the manifest weight of the evidence, he does not point to anything in the record specifically relating to his own convictions. App.R. 12(A)(2) provides that the court may

disregard an assignment of error presented for review if the party raising it fails to identify in the record the error on which the assignment of error is based, or fails to argue that assignment separately in the brief, as required under App.R. 16(A). In light of Johnson's failure to provide a separate argument in support of his sixth assignment of error, and pursuant to App.R. 12(A)(2), we decline to address Johnson's sixth assignment of error.

{¶ 60} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

MICHELLE J. SHEEHAN, P.J., and
EMANUELLA D. GROVES, J., CONCUR